**In re: POLAROID ERISA LITIGATION**

**This Document Relates to: ALL ACTIONS**

**No. 03 Civ.8335(WHP).**

United States District Court, S.D. New York.

March 31, 2005.

**464**

Lynn Lincoln Sarko, Derek Loeser, Keller Rohrback L.L.P., Seattle, WA, Co–Lead Counsel for Plaintiffs.

Richard S. Schiffrin, Joseph H. Meltzer, Schiffrin & Barroway, LLP, Bala Cynwyd, PA, Co–Lead Counsel for Plaintiffs.

Curtis V. Trinko, New York City, Liaison Counsel for Plaintiffs.

Harvey J. Wolkoff, Ropes & Gray, Boston, MA, for Defendant Gary DiCamillo.

David P. Donovan, Wilmer Cutler Pickering Hale & Dorr LLP, McLean VA, for Defendants Donald Halsted, William L. Flaherty, Judith Boynton, Carl Lueders, Harvey Greenberg, Benjamin Byrd, John Jenkins, W. Katrowitz, Janet Cramer, Deirdre Evans, Neal Goldman and William Hubert, Patricia Weller, Andra Bolotin, Jeffrey Miller, Philip Ruddick and Ralph Norwood.

Terri L. Ross, McDermott, Will & Emery, New York City, for Defendant State Street Bank & Trust Co.

## MEMORANDUM AND ORDER

PAULEY, District Judge.

Plaintiffs are four employees of Polaroid Corporation ("Polaroid" or the "Company") who participated in the Polaroid Retirement Savings Plan (the "Plan"). They bring this consolidated putative class action pursuant to Section 502 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132. Plaintiffs claim that the defendants, eighteen officers and directors of Polaroid as well as State Street Bank & Trust Company ("State Street") and Polaroid, breached their fiduciary duties to Plan participants by, *inter alia*, maintaining Plan investments in Polaroid common stock despite knowing that it was imprudent. Plaintiffs seek to recover investment losses they sustained as a result of the defendants' fiduciary breaches. The individual defendants ("Defendants") move to dismiss the claims against them pursuant to Federal Rules of Civil Procedure 8, 9(b) and 12(b)(6).[1] For the reasons that follow, Defendants' motion is granted in part and denied in part.

## BACKGROUND

For many years, Polaroid "was the leading instant imaging company in the world and was the only manufacturer of traditional chemical-based, instant cameras and film in the United States." (Amended Consolidated Complaint ("Compl.") ¶ 119.) Resting largely on the strength of its instant photographic products, the Company was on a strong financial footing when its common stock reached a high of $60.31 in July 1997. (Compl. ¶ 123.) In the late

---

1. The moving Defendants do not include Polaroid, which has been in bankruptcy since before this action was filed, or State Street, which was added as a defendant by the Amended Consolidated Complaint filed September 15, 2004, nearly two months after briefing on this motion was complete. Plain-

tiffs had stipulated that the allegations against the non-State Street defendants in the Amended Consolidated Complaint would be "precisely the same" as those in the Consolidated Complaint of April 15, 2004. (Stip. & Order, dated Sept. 23, 2004.)

1990s, however, technological advances in one-hour film developing and digital photography eclipsed Polaroid's instant film technology. (Compl.¶ 123.) Thereafter, the confluence of a heavy debt load, declining sales and ill-advised management decisions adversely affected Polaroid's profitability and balance sheet. (Compl. ¶ 123.)

On October 1, 1999, Polaroid stock was trading at $25.88 per share. (Compl.¶ 120.) Polaroid filed for Chapter 11 bankruptcy protection in October 2001. (Compl.¶ 119.) By November 2001, the stock price had fallen to $0.24 per share, and in December 2002 it bottomed at $0.01 per share. (Compl.¶ 206.) [2]

On August 22, 2003, a special examiner (the "Examiner") appointed by the Bankruptcy Court issued his report on Polaroid's accounting and management practices during the one-year period from October 11, 2000 to October 11, 2001 (the "Mandarino Report"). (Compl. ¶ 163 & Ex. 3: Report of Perry M. Mandarino, dated Aug. 22, 2003 ("Report").) The Mandarino Report concluded that Polaroid's financial condition between December 31, 2000 and July 31, 2001 "may have been more negative" than its public filings reflected. (Report at 9; see Compl. ¶ 164.) Specifically, the Mandarino Report uncovered questionable accounting measures employed at the end of 2000 concerning the treatment of deferred tax assets, the timing of Polaroid's reversal of restructuring reserve charges and reclassification of the Company's debt. (Compl. ¶¶ 124–25, 165–67; Report at 9–10, 21–62.) The Report concluded that "the cumulative weight of these issues, taken together, should have been viewed as raising serious issues respecting

Polaroid's ability to continue as a going concern through December 31, 2001." (Report at 62.)

## I. *The Parties*

At all relevant times, Plaintiffs were Polaroid employees whose retirement accounts under the Plan contained shares of Polaroid stock. (Compl.¶¶ 10–13.) The putative class consists of all Polaroid employees who were similarly situated between October 1, 1999 and January 15, 2003 (the "Class Period"). (Compl.¶ 84.)

The eighteen Defendants were officers and directors of Polaroid during the Class Period. (Compl.¶ 48.) Gary DiCamillo was the Chairman of the Board of Directors during the relevant time and Chief Executive Officer until he resigned on July 1, 2002. (Compl.¶ 17.) Judith Boynton was Executive Vice President and Chief Financial Officer ("CFO") from October 1999 through January 2001. (Compl.¶ 32.) William Flaherty succeeded her in June 2001 and served in those positions until January 2003. (Compl.¶ 35.) Carl Lueders was the acting CFO during the interim period and was a Vice President at all other times. (Compl.¶ 23.) Donald Halsted was a Vice President and the Controller during the Class Period. (Compl.¶ 28.) "[F]or at least part of the Class Period," Neal Goldman was General Counsel, Chief Accounting Officer and an Executive Vice President; Benjamin Byrd was the Tax Director; and Jeffrey Miller was the Finance Director. (Compl.¶¶ 21, 27, 38.) All other Defendants are alleged to have been "high-level Polaroid officers and directors." [3] (Compl.¶ 48.)

---

**2.** In 2002, Polaroid changed its corporate name to "Primary PDC, Inc." (Compl.¶ 15.)

**3.** These Defendants are: Andra Bolotin, Janet Cramer, Dierdre Evans, Harvey Greenberg, William Hubert, John Jenkins, Warren Kantrowitz, Ralph Norwood, Philip Ruddick and Patricia Weller.

## II. The Plan and Defendants' Roles Therein

Polaroid offered its employees a retirement savings plan that, by design, was heavily invested in Polaroid stock. (Compl.¶¶ 6, 81–82.) The Plan consisted of four components, of which only the 401(k) and Employee Stock Ownership Plan ("ESOP") portions are relevant to this action. Plan participants contributed to their individually maintained Plan accounts through payroll deductions, and the Company supplemented its employees' accounts through matching and stand-alone contributions. (Compl.¶¶ 49, 52, 63, 67.) A participant's Plan contributions were invested in one or more of the Plan components according to the participant's instructions. (Compl.¶ 49.)

The stated purpose of the 401(k) portion of the Plan was "to enable Participants to defer income taxes and save for retirement." (Defendants' Memorandum in Support of Motion to Dismiss ("Def.Mem.") Ex. A: Polaroid Retirement Savings Plan, effective Dec. 1, 1997 ("Plan")[4] at 1.) The Polaroid 401(k) presented participants with a menu of stock funds among which they could allocate their contributions. (Compl. ¶¶ 61–66; Plan §§ 10.2, 10.3.) The Plan documents directed that one of those funds was to be the Polaroid Common Stock Fund, which consisted of the Company's stock. (Compl. ¶ 66; Plan § 10.2(b).) Polaroid matched its employees' 401(k) contributions. (Compl. ¶ 63; Plan § 4.1.) ESOPs, by contrast, are "designed to invest primarily in qualifying employer securities." 29 U.S.C. § 1107(d)(6)(A). As such, the Plan documents directed that the ESOP

portion of the Plan was to be invested "primarily" in Polaroid common stock. (Compl. ¶ 69; Plan § 5.7(a).) Employees could not contribute to the ESOP through payroll deductions. Rather, Polaroid funded the ESOP itself through cash, treasury or "authorized but unissued Common Stock." (Compl. ¶¶ 67–68; Plan §§ 1.1(a), 5.3–5.4.)

As CEO, DiCamillo appointed the "Plan Administrators" and "Fund Managers" for the Plan. (Compl. ¶ 17; Plan §§ 14.1, 14.4.) The Plan documents vested Plan Administrators with responsibility "for the administration and interpretation of the Plan." (Plan § 14.2.) Toward this end, Plan Administrators appointed "Plan Managers," who "handle[d] the daily administration and oversight" of the Plan. (Plan §§ 14.2(f), 14.8, 14.9.) Plan Administrators were authorized to use "all the powers necessary to carry out the provisions of the Plan." (Plan § 14.2(a).) The Plan documents gave Fund Managers responsibility for, inter alia, selecting investment alternatives, reviewing "the valuations of the assets of the Trust and the earnings record of investments," and overseeing the trustee and investment managers. (Plan §§ 10.2(b), 14.5.) Fund Managers also received investment directions from Plan participants. (Plan § 10.3.) State Street was the Plan trustee and had express authority and control over the assets of the ESOP and the Company Stock Fund in the 401(k) portion of the Plan. (Compl.¶ 42.)

Plan Administrators served one-year terms beginning mid-year. (Compl.¶ 19.) The Complaint alleges that the following Defendants were Plan Administrators

---

[4]. The governing Plan document assumed at least three separate incarnations, effective December 1, 1997, June 22, 2001 and January 1, 2002, respectively. (Compl.¶ 45.) Plaintiffs represent that these three versions were mate-

rially the same. (Compl.¶ 45.) This Court cites to the 1997 Plan except where the versions diverge or one version is particularly pertinent.

from 2000 to 2001: Byrd, Cramer, Evans, Greenberg, Jenkins, Kantrowitz and Lueders. (Compl. ¶¶ 20–26, 30.) The Plan Administrators from 2001 to 2002 included Defendants Cramer, Evans, Goldman, Halsted and Hubert. (Compl.¶¶ 25–30.) Like Plan Administrators, Fund Managers' terms also started and ended mid-year. (Compl.¶ 31.) Defendants Boynton, Ruddick and Norwood served as Fund Managers for the 1999–2000 and 2000–2001 terms. (Compl.¶¶ 32–34.) For the 2001–2002 term, the Fund Managers included Defendants Bolotin, Byrd, Miller and Flaherty, with Defendant Weller serving as a Fund Manager only in the second half of 2001. (Compl.¶¶ 21, 35–39.) The Fund Managers for the 2002–2003 term included Defendants Bolotin, Byrd and Miller. (Compl.¶¶ 21, 35, 37–39.) Hubert and Miller were also Plan Managers at unspecified times throughout the Class Period. (Compl. ¶¶ 29, 38.)

### III. *Defendants' Reaction to Polaroid's Deteriorating Financial Situation*

The Complaint alleges that in the late 1990s, as Polaroid's debt increased, "Defendants set about to engage in a series of schemes that would mask the Company's perilous condition from the market place in general and Plan participants in particular." (Compl.¶ 124.) Specifically, Plaintiffs claim that in 2000 Polaroid officials, including Defendants, engaged in the very tactics outlined in the Mandarino Report: "the improper use of deferred tax assets, inappropriate restructuring of reserves and reclassification of the Company's debt." (Compl. ¶ 124 & n. 11; *see* Compl. ¶¶ 127–42, 165–67.) Such devices temporarily masked the Company's true state and enabled Polaroid's auditor, KPMG, to delay issuing a going concern qualification until August 2001. (Compl.¶¶ 125, 138, 167.) The Complaint alleges that, "[a]s a consequence of the[ir] high-level positions"

in the Company, Defendants "knew or should have known" of these misleading accounting measures that "made Polaroid stock an imprudent investment." (Compl. ¶¶ 48, 168; *see* Compl. ¶¶ 172, 177, 250.) Had Polaroid accurately accounted for these items, there may have been "serious issues respecting Polaroid's ability to continue as a going concern through" 2001. (Compl. ¶ 125; *see* Compl. ¶ 167.)

Polaroid's financial condition worsened over the course of the Class Period, as reflected in its stock price. (Compl.¶¶ 120, 122, 153, 206.) The Complaint alleges that Defendants, by virtue of their senior positions in the Company, "had access to and thus knowledge of the true state of affairs at Polaroid, and awareness of the serious and substantial problems that caused the Company's bankruptcy." (Compl. ¶ 48; *see* Compl. ¶¶ 172, 176.) "Despite the bleak condition of the Company, the precipitous decline in its stock price, the imminent possibility of financial collapse, and ultimately its actual collapse," the Complaint alleges, Defendants "continued to offer Polaroid stock as a Plan investment option for participant contributions, match contributions in Polaroid stock, and ... contribute Polaroid stock to the Plan." (Compl.¶ 162.) The Plan Administrator and Fund Manager Defendants "failed to conduct an appropriate investigation ... and otherwise failed to protect the Plan and its participants against inevitable losses." (Compl.¶ 171.) Even after November 2001, when State Street—the Plan trustee—started steadily selling off the ESOP's Polaroid holdings, Defendants continued to maintain investments in Polaroid stock through the 401(k) portion of the Plan. (Compl.¶¶ 175–76.) At the end of 1998, the Plan held over seven million shares of Polaroid common stock, valued at $135,759,974. (Compl.¶ 82.) By the end of 2000, the Plan had accumulated an addi-

tional 600,000 shares but the total value of its Polaroid stock holdings had plummeted to $45,745,761. (Compl. ¶ 82.)

The Complaint also alleges that Defendants "failed to inform participants and the market in general of the inappropriate accounting tactics utilized by the Company and the Individual Defendants in an attempt to artificially shore up earnings/revenue figures." (Compl. ¶ 143; *see* Compl. 171.) Rather, the "Company's top-level officers" issued reassuring statements to Plan participants through internal company communications and through Polaroid's public statements, including its filings with the Securities and Exchange Commission. (Compl.¶¶ 145–52, 154.) In a series of press releases issued in February, June and July 2001, Polaroid began to acknowledge that the Company was suffering financial difficulties and had embarked on a global restructuring plan. (Compl.¶¶ 156–58.) The Company filed for bankruptcy protection in October 2001. (Compl.¶ 119.) In December, Polaroid informed Plan participants that the Company's stock would have no value and advised them to sell their shares. (Compl.¶ 174.)

Plaintiffs filed this action in October 2003. In March 2004, this Court consolidated this action with two related lawsuits and appointed co-lead counsel for Plaintiffs. (Pretrial Order No. 1, dated Mar. 5, 2004.) On September 15, 2004, Plaintiffs filed an Amended Consolidated Complaint adding State Street as a defendant. The Amended Consolidated Complaint asserts four claims. In Count I, Plaintiffs claim that Defendants breached their fiduciary duties to prudently and loyally manage the Plan's assets by continuing to offer Polaroid stock as an investment option, and by directing and approving Plan investments in Polaroid stock. (Compl.¶¶ 214–21.) Defendants are alleged to be liable not only for their own breaches but for those of their co-fiduciaries as well. (Compl.¶¶ 226–27.) Count II claims that DiCamillo breached a separate fiduciary duty to monitor the fiduciaries he appointed and provide them with complete and accurate information bearing on the suitability of Polaroid stock for Plan investment. (Compl.¶¶ 233–43.) Count III asserts that Defendants breached their ERISA fiduciary duties by "failing to provide complete and accurate information regarding Polaroid Stock and the soundness of Polaroid Stock as [a] retirement plan investment to participants." (Compl.¶ 249.) As with Count I, the Complaint alleges that Defendants are also liable in this regard for their co-fiduciaries' actions. (Compl.¶ 253.) Lastly, in Count IV, Plaintiffs claim that Defendants breached their fiduciary duties to Plan participants because they failed to neutralize the conflicts of interest created by their own holdings of Polaroid stock. (Compl.¶¶ 257–62.)

Defendants move to dismiss the Complaint in all respects. Defendants contend that the Complaint fails to differentiate among Defendants or otherwise plead with the requisite specificity, in contravention of Rules 8 and 9(b) of the Federal Rules of Civil Procedure. Defendants also submit that the Complaint should be dismissed pursuant to Rule 12(b)(6) because each of its four counts fails to state a claim on which relief can be granted.

## DISCUSSION

### I. *Standard on a Motion to Dismiss*

A court should not dismiss a complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *accord Jaghory v. N.Y. State Dep't of Educ.,* 131 F.3d 326, 329 (2d

Cir.1997). In this limited task, the issue is not whether a plaintiff will ultimately prevail on his claim, but whether the plaintiff "is entitled to offer evidence in support of the allegations in the complaint." *Hamilton Chapter of Alpha Delta Phi, Inc. v. Hamilton Coll.*, 128 F.3d 59, 62 (2d Cir. 1997). While the focus is primarily on the pleading, the court may also consider:

> any written instrument attached to [the complaint] as an exhibit or any statements or documents incorporated in it by reference, as well as public disclosure documents required by law to be, and that have been, filed with the SEC, and documents that plaintiffs either possessed or knew about and upon which they relied in bringing suit.

*Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir.2000) (citations omitted).

On a motion to dismiss under Rule 12(b)(6), a court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor. *Grandon v. Merrill Lynch & Co.*, 147 F.3d 184, 188 (2d Cir. 1998). Nonetheless, the court is not bound to credit conclusory allegations if "they are belied by more specific allegations of the complaint" or any other materials that the court may properly consider on the motion. *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1092 (2d Cir.1995).

## II. Compliance With Federal Pleading Standards

Defendants seek to dismiss the Complaint for failure to comply with Rules 8 and 9(b) of the Federal Rules of Civil Procedure. (Def. Mem. at 12–18.)

### A. Rule 9(b)

Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R.Civ.P. 9(b); *see Harsco Corp. v. Segui*, 91 F.3d 337, 347 (2d Cir.1996). Even though Plaintiffs' claims assert breaches of fiduciary duty, Defendants contend that they sound in fraud and are therefore subject to the strict pleading standards of Rule 9(b).

The Complaint alleges that Polaroid officials, including Defendants, knowingly engaged in a "series of schemes" to mask the Company's "deteriorating financial condition" from the public. (Compl.¶ 124.) At oral argument, Plaintiffs' counsel characterized this course of conduct as "a fraud." (Transcript of Oral Argument, dated Nov. 23, 2004 ("Tr.") at 37.) However, Plaintiffs are not seeking to redress this alleged malfeasance. Rather, Plaintiffs claim that Defendants, acting in their capacities as ERISA fiduciaries, failed to respond to the "series of schemes" by continuing Polaroid stock as a Plan investment option and by presenting Plan participants with an inaccurate portrait of the Company's financial condition. As Defendants concede, Plaintiffs do not allege that Defendants endeavored to defraud Plan participants by bilking the Plan for their own benefit or duping Polaroid employees. (Tr. at 21 ("This is not … a case where Ken Lay, who … knows that this company is in dire trouble, … is selling his stock and exhorting these employees to purchase the stock.")); *see Cokenour v. Household Int'l, Inc.*, No 02 C 7921, 2004 WL 725973, at *4 (N.D.Ill. Mar. 31, 2004); *cf. Thornton v. Evans*, 692 F.2d 1064, 1082–83 (7th Cir.1982) ("The breach of fiduciary duties under ERISA, which was allegedly caused by a fraudulent scheme to bilk the Fund, is the crux of the instant action.").

The Complaint also characterizes many of the asserted breaches as knowing and intentional. However, allegations of intentional conduct do not transmogrify breach

of fiduciary claims into causes of action for fraud; such allegations and characterizations are extraneous to Plaintiffs' claims. *See Rankin v. Rots,* 278 F.Supp.2d 853, 866 (E.D.Mich.2003) (holding that allegations similar to fraud do not implicate Rule 9(b) where "the gravamen of [the] claim is grounded in ERISA"). Moreover, knowing conduct is a prerequisite for co-fiduciary liability under ERISA. *See* 29 U.S.C. § 1105(a)(1),(3). Despite the incendiary tone of many of Plaintiffs' allegations and the insinuation that Defendants engaged in fraudulent accounting tactics that artificially inflated the price of Polaroid stock, Plaintiffs' claims in this action are for breach of fiduciary duty simpliciter. (Compl.¶¶ 186–238.) Accordingly, Rule 9(b) is inapplicable. *See Concha v. London,* 62 F.3d 1493, 1503 (9th Cir.1995); *In re WorldCom, Inc.,* 263 F.Supp.2d 745, 759–60 (S.D.N.Y.2003) (holding ERISA pleadings to "Rule 8(a)'s simplified pleading standard" (quoting *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 513, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002))).

**B.** *Rule 8*

■ Rule 8 requires that a complaint include "a short and plain statement of the claim showing that a pleader is entitled to relief." Fed.R.Civ.P. 8(a). To satisfy this unexacting standard, the complaint must merely "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz,* 534 U.S. at 512, 122 S.Ct. 992 (quoting *Conley,* 355 U.S. at 47, 78 S.Ct. 99). The complaint must allow each defendant to answer the plaintiff's claims and prepare for trial. *Salahuddin v. Cuomo,* 861 F.2d 40, 42 (2d Cir.1988).

Defendants argue that Plaintiffs impermissibly group Defendants together and cast general allegations without specifying each Defendant's relevant conduct. However, an ERISA complaint need "do little more than track the statutory definition" to establish a defendant's fiduciary status in compliance with Rule 8. *WorldCom,* 263 F.Supp.2d at 759; *see also Smith v. Local 819 I.B.T. Pension Plan,* 291 F.3d 236, 241 (2d Cir.2002) (finding that conclusory pleadings adequately allege fiduciary duty); *Howell v. Motorola, Inc.,* 337 F.Supp.2d 1079, 1101 (N.D.Ill.2004) (same). The Complaint satisfies that standard by separately alleging that each Defendant was a Plan fiduciary who exercised discretionary authority regarding the Plan. (Compl.¶¶ 17–40.) *Cf. In re Providian Fin. Corp. ERISA Litig.,* No. C 01–05027 CRB, 2002 WL 31785044, at *1 (N.D.Cal. Nov. 14, 2002) (holding that a complaint violated Rule 8 because it "lumped the various classes of defendants into an undifferentiated mass and alleged that all of them violated all of the asserted fiduciary duties"). The Complaint then claims that, because they were "high-level Polaroid officers and directors" (Compl.¶ 48), each Defendant knew or should have known of Polaroid's declining stock price and the accounting improprieties that the Mandarino Report describes. (Compl.¶¶ 48, 168, 172, 250.) *See WorldCom,* 263 F.Supp.2d at 767 n. 15 (general allegations of knowledge sufficient when complaint makes allegations against groups of defendants); *cf. Howell,* 337 F.Supp.2d at 1091 (failure to allege whether defendants were company employees or their positions violates Rule 8). Plaintiffs allege that starting in October 1999, Defendants' knowledge of these facts should have caused them to conclude that Polaroid stock was an imprudent investment and eliminate the stock as a Plan investment.[5] *Cf. Howell,* 337 F.Supp.2d at

---

5. The Complaint does not pinpoint at what point Defendants should have eliminated Po-

laroid stock as a Plan investment, so this Court interprets Plaintiffs' claim to be that it

1091 (allegation that defendants "should have known" may be insufficient); *Crowley v. Corning, Inc.,* 234 F.Supp.2d 222, 230 (W.D.N.Y.2002) (holding that not specifying how defendants acquired the relevant knowledge violates Rule 8).

Defendants challenge the sufficiency of these allegations on the ground that the Complaint fails to differentiate among Defendants, except when establishing each Defendant's fiduciary status. However, Rule 8 does not require Plaintiffs to identify each of the eighteen Defendants by name each time the Complaint makes an allegation that applies equally to all. *See Rankin,* 278 F.Supp.2d at 867; *WorldCom,* 263 F.Supp.2d at 767 n. 15. Nor does Rule 8 require that Plaintiffs limn the specific circumstances by which each Defendant acquired knowledge of the alleged misconduct. Outside of fraud, Plaintiffs are not expected to know those specifics at this early stage. *See Concha,* 62 F.3d at 1503 (stating that Rule 9(b) does not apply to a breach of fiduciary duty claim because the plaintiff "often will not, at the time he files his complaint, be in a position to describe with particularity the events constituting the alleged misconduct"); *see also In re Natural Gas Commodity Litig.,* 337 F.Supp.2d 498, 506 (S.D.N.Y.2004) ("[I]t is the role of the litigation tools of discovery and summary judgment to weed out unmeritorious suits."); *cf. Old Republic Ins. Co. v. Hansa World Cargo Service, Inc.,* 170 F.R.D. 361, 376 (S.D.N.Y.1997) (dismissing fraud claims for failure to comply with Rule 9(b) because "the Complaint fails to differentiate among the numerous … defendants").

Plaintiffs' 67–page Complaint makes clear that Counts I, III and IV apply to all Defendants, and that Count II applies only to DiCamillo. The fact that most of Plaintiffs' claims apply to all Defendants and

was an imprudent investment at all times

that the factual allegations refer to them collectively does not render the Complaint violative of Rule 8. *See Rankin,* 278 F.Supp.2d at 867. To the extent Defendants argue that the Complaint attempts to attach liability to individuals who were no longer at Polaroid at the relevant time, or that the Complaint attributes certain acts and statements to the Company rather than any individual (Def. Mem. at 15–16), these arguments bear on whether Plaintiffs have failed to state a claim. This Court considers those arguments, *infra.*

Therefore, Defendants' motion to dismiss the Complaint for failure to meet the pleading requirements of Rules 8 and 9(b) is denied.

### III. *Count I: Failure to Prudently and Loyally Manage Plan Assets*

An ERISA fiduciary may be liable for breaching his fiduciary duties through conduct adversely affecting the plan only to the extent that conduct occurs while the individual is a fiduciary and falls within the scope of his fiduciary authority. *See* 29 U.S.C. § 1109; *Pegram v. Herdrich,* 530 U.S. 211, 225–26, 120 S.Ct. 2143, 147 L.Ed.2d 164 (2000). "The 'threshold question' in an action charging breach of fiduciary duty under ERISA 'is not whether the actions of some person employed to provide services under a plan adversely affected a plan beneficiary's interest, but whether that person was acting as a fiduciary (that is, performing a fiduciary function) when taking the action subject to complaint.'" *WorldCom,* 263 F.Supp.2d at 757 (quoting *Pegram,* 530 U.S. at 226, 120 S.Ct. 2143).

Count I alleges that Defendants breached their fiduciary duties to the Plan and Plan participants by "continu[ing] to offer the Polaroid Stock as an investment option

during the Class Period.

for the Plan and to direct and approve Plan investment in Polaroid Stock, instead of in cash or other investments." (Compl.¶ 219.) Plaintiffs' claim thus presents three questions: (1) were Defendants fiduciaries of the Plan with respect to Plan investment decisions? (2) if so, was it within Defendants' authority to eliminate the Plan's investments in Polaroid common stock? and (3) did Defendants have knowledge of facts which should have caused them to eliminate the Plan's investments in Polaroid stock?

### A. *Existence and Scope of Duties*

■ "ERISA ... defines 'fiduciary' not in terms of formal trusteeship, but in *functional* terms of control and authority over the plan, *see* 29 U.S.C. § 1002(21)(A), thus expanding the universe of persons subject to fiduciary duties." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993). The ERISA statute provides that a person is only a fiduciary *"to the extent* ... he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, ... [or] he has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A) (emphasis added); *see Kerns v. Benefit Trust Life Ins. Co.*, 992 F.2d 214, 217 (8th Cir.1993) ("Fiduciary status ... is not 'an all or nothing concept.... [A] court must ask whether a person is a fiduciary with respect to the particular activity in question.'") (quoting *Coleman v. Nationwide Life Ins. Co.*, 969 F.2d 54, 61 (4th Cir.1992)). An individual may be a fiduciary for ERISA purposes either because the plan documents explicitly describe fiduciary responsibilities or because that person functions as a fiduciary. *See Concha*, 62 F.3d at 1501–02 (holding that "a person designated in the Plan as a 'named fiduciary' is subject to liability" but that "there need not be an express delegation of fiduciary duty in the Plan instrument itself").

### 1. *Defendants' Discretion Over Plan Investment Decisions*

■ The Complaint broadly alleges that "the Defendants were all responsible ... for the selection, maintenance and monitoring of the Plan's investment options, including the option of Company Stock." (Compl.¶ 216.) While this allegation broadly tracks the statutory definition of fiduciary, *see WorldCom*, 263 F.Supp.2d at 759, this Court need not credit conclusory allegations that are belied by more specific allegations or the documents incorporated in the Complaint. *See Hirsch*, 72 F.3d at 1092.

According to the Complaint, the Fund Managers "had and exercised discretionary authority and control with respect to the management and administration of the Plan and Plan assets." (Compl.¶ 107.) Indeed, with respect to the 401(k) portion of the Plan, the Plan documents instruct Fund Managers to "establish a number of Funds as investment alternatives." (Plan § 10.2(b).) Fund Managers were also responsible for overseeing the trustee and issuing guidelines regarding Plan investments. (Plan § 14.5.) Accordingly, Plaintiffs have sufficiently pled that the Fund Manager Defendants were fiduciaries in relation to the Plan's investments.

■ With respect to the Plan Administrator Defendants, the Complaint alleges that they also "had and exercised discretionary authority and control respecting management and administration of the Plan and disposition of assets." (Compl.¶ 103.) Defendants argue that the Plan does not provide Plan Administrators with any discretion over investment

options. In support, Defendants note that the Plan documents limit the Plan Administrators' responsibility to "the administration and interpretation of the Plan." (Plan § 14.2.) However, the Plan charges the Plan Administrators to "administer the Plan in accordance with all its terms" and empowers them to use "all the powers necessary to carry out the provisions of the Plan." (Plan § 14.2(a).) Moreover, Plaintiffs allege that Plan Administrators were functional fiduciaries in that they exercised discretion over investment decisions. (Compl.¶¶ 102–03.) Indeed, meeting minutes reveal that Plan Administrators made recommendations concerning the proportion of the Company's ESOP contribution that should be in Polaroid Stock. (Plaintiffs' Memorandum in Opposition to Motion to Dismiss ("Pl. Mem.") Ex. 9: Polaroid Plan Administrator Teleconference Meeting Minutes, dated June 9, 2000; see Compl. ¶ 102.) At this stage of the proceedings, affording Plaintiffs every reasonable inference, the Complaint adequately alleges that the Plan Administrator Defendants had and exercised discretionary authority concerning Plan investments, and thus were fiduciaries in that regard. See Rankin, 278 F.Supp.2d at 867–68 (allegation that defendants had "de facto discretionary authority to change investment options within the Plan" held to be sufficient).

▇ Contrary to Plaintiffs' bald assertion that all Defendants had responsibility for investment decisions (Compl.¶ 216), the Plan documents do not give DiCamillo any authority with respect to the Plan's investments. Instead, the CEO's duties were limited to appointing and removing Plan Administrators and Fund Managers, and he was a fiduciary in that capacity. (Plan §§ 14.1, 14.4.) ERISA does not attach liability for investment decisions to fiduciaries whose roles were limited to appointing, retaining and removing other fiduciaries. See Rankin, 278 F.Supp.2d at 872; Crowley, 234 F.Supp.2d at 229. However, an individual may be a fiduciary as to plan functions for which the plan affords him no discretionary authority if he nonetheless "exercises ... discretionary authority." 29 U.S.C. § 1002(21)(A); see Concha, 62 F.3d at 1501–02; Rankin, 278 F.Supp.2d at 867–68. Echoing the ERISA definition, Plaintiffs assert that DiCamillo was a functional fiduciary in that he "exercised final decision-making authority regarding the Plan." (Compl.¶ 97.) At this early stage, Plaintiffs have sufficiently alleged that DiCamillo was a fiduciary respecting investment decisions to allow discovery to proceed. See WorldCom, 263 F.Supp.2d at 759.

Accordingly, Plaintiffs have sufficiently pled that all Defendants were fiduciaries with respect to Plan investments.

### 2. Control Over Investments in Polaroid Stock

Defendants argue that the Plan documents expressly constrained their discretionary authority concerning investments by the ESOP in Polaroid stock, or removal of the Polaroid Common Stock Fund as a 401(k) investment option. In fact, the Plan documents require that "[t]he ESOP portion ... be invested primarily" in Polaroid stock. (Plan § 5.7(a).) Similarly, the Plan documents mandate that one of the investment alternatives under the 401(k) portion "shall be the Common Stock Fund." (Plan § 10.2(b).) Defendants argue that overriding these provisions would require amending the Plan documents and encroach on a settlor function. (Plan § 16.1.)

Nonetheless, ERISA commands fiduciaries to obey Plan documents only to the extent they are consistent with other fiduciary duties. See 29 U.S.C.

§ 1104(a)(1)(D) ("[A] fiduciary shall discharge his duties ... in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of ERISA."). Foremost among a fiduciary's duties are the duties to act "for the exclusive purpose of providing benefits to participants and their beneficiaries" and "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man ... would use." 29 U.S.C. § 1104(a)(1); *see O'Neil v. Ret. Plan for Salaried Employees of RKO Gen., Inc.*, 37 F.3d 55, 61 (2d Cir.1994); *Donovan v. Bierwirth*, 680 F.2d 263, 271 (2d Cir.1982) (holding that a fiduciary must manage and dispose of plan assets with "an eye single" to the participants and beneficiaries). Thus, while failure to follow plan documents may constitute a breach of fiduciary duty, *see Dardaganis v. Grace Capital Inc.*, 889 F.2d 1237, 1241–42 (2d Cir.1989), compliance with the terms of the plan does not, by itself, satisfy ERISA's imperatives, *Harris Trust & Sav. Bank v. John Hancock Mut. Life Ins. Co.*, No. 83 Civ. 5401(DC), 1997 WL 278116, at *2 (S.D.N.Y. May 23, 1997) ("[A]n ERISA fiduciary cannot 'hide' behind the terms of a contract to insulate itself from liability for breaching its fiduciary duty."). The Second Circuit has acknowledged the tension inhering in 29 U.S.C. § 1104(a)(1)(D). *Harris Trust & Sav. Bank v. John Hancock Mut. Life Ins. Co.*, 302 F.3d 18, 28–29 (2d Cir.2002); *see also Moench v. Robertson*, 62 F.3d 553, 569 (3d Cir.1995) ("[W]hen the plaintiff claims that an ESOP fiduciary violated its ERISA duties by continuing to invest in employer securities, the conflict becomes particularly stark.").

Recognizing that circumstances requiring a fiduciary to disobey plan documents present the exception to the rule, courts have narrowly circumscribed when a plaintiff may sue a fiduciary for adhering to the terms of the governing plan. Thus, the plaintiff bears the burden of overcoming a presumption that the fiduciary's decision to continue to offer an investment in the employer's securities is reasonable and prudent. *Kuper v. Iovenko*, 66 F.3d 1447, 1459 (6th Cir.1995); *Moench*, 62 F.3d at 571–72. To satisfy this burden, a plaintiff must "show that circumstances arose which were not known or anticipated by the settlor of the trust that made a continued investment in the company's stock imprudent, and in effect, impaired the purpose for which the trust was established." *WorldCom*, 263 F.Supp.2d at 764 (citing *Moench*, 62 F.3d at 571); *see Kuper*, 66 F.3d at 1458–59; *Rankin*, 278 F.Supp.2d at 878 ("[A] fiduciary is not required to blindly follow the Plan's terms."). Moreover, while this rule has generally been applied to ESOPs, it applies with equal force to 401(k) plans requiring that the employer's stock be an investment option. *See WorldCom*, 263 F.Supp.2d at 764–65 (plaintiff stated a claim for breach of fiduciary duty through defendants' maintenance of 401(k) investments in WorldCom stock since, "[e]ven in the context of an ESOP, ... a fiduciary may be liable for continuing to offer an investment in the employer's securities").

■ Thus, the fact that the Plan required investments in Polaroid stock does "not ipso facto relieve [Defendants] of their fiduciary obligations." *Rankin*, 278 F.Supp.2d at 879. All Defendants had discretionary authority over Plan investments. By force of statute, Defendants had the fiduciary responsibility to disregard the Plan and eliminate Plan investments in Polaroid stock if the circumstances warranted. *See* 29 U.S.C. § 1104(a)(1)(D). As such, to the extent Polaroid stock was an imprudent investment, Defendants possessed the authority as a matter of law to exclude Polaroid

stock from the ESOP or as a 401(k) investment alternative, regardless of the Plan's dictates.

### B. Breach of Fiduciary Duties

 Where, as here, the fiduciary defendants are also corporate insiders, a plaintiff can overcome the presumption of prudence that attaches to their continued investment in company stock by showing (1) that there was a "precipitous decline" in the price of the stock and (2) that the fiduciary had "knowledge of its impending collapse." Moench, 62 F.3d at 572; see WorldCom, 263 F.Supp.2d at 764–65; see also In re Duke Energy ERISA Litig., 281 F.Supp.2d 786, 793–94 (W.D.N.C.2003); In re McKesson HBOC, Inc. ERISA Litig., No. C00–20030RMW, 2002 WL 31431588, at *5 (N.D.Cal. Sept. 30, 2002). A fiduciary's failure to investigate may also constitute an abuse of discretion if "an adequate investigation would have revealed to a reasonable fiduciary that investment [in employer stock] . . . was improvident." Kuper, 66 F.3d at 1460; see Moench, 62 F.3d at 572; Keach v. U.S. Trust Co., 240 F.Supp.2d 840, 844 (C.D.Ill.2002).

Whether a plaintiff has overcome the presumption of prudence is an evidentiary determination that is ill-suited to resolution on a motion to dismiss. See, e.g., In re Enron Corp. Sec., Deriv. & ERISA Litig., 284 F.Supp.2d 511, 531 n. 3 (S.D.Tex.2003); Vivien v. Worldcom, Inc., No. C 02–01329 WHA, 2002 WL 31640557, at *5 (N.D.Cal. July 26, 2002). Nonetheless, this Court must ensure that Plaintiffs have sufficiently alleged facts entitling them to present evidence in support of their claims. See Hamilton Coll., 128 F.3d at 62.

### 1. Drop in Stock Price

 The Complaint alleges that between October 1, 1999 and December 2002, the price of Polaroid stock plunged from $25.88 to $0.01 per share. (Compl.¶¶ 120, 206.) Defendants argue that this drop in stock price is irrelevant, noting that an investment's performance is not the test for determining whether a fiduciary acted prudently. (Def. Mem. At 26) (citing Laborers Nat'l Pension Fund v. N. Trust Quantitative Advisors, Inc., 173 F.3d 313, 317 (5th Cir.1999); In re Dynegy, Inc. ERISA Litig., 309 F.Supp.2d 861, 875 (S.D.Tex.2004).) However, Defendants' argument misframes the issue. The question is not whether the stock's poor performance evidences a breach of fiduciary duty. It is whether Defendants acted imprudently by maintaining Plan investments in Polaroid stock despite its falling price.

Defendants also argue that the stock price did not drop "precipitously" but fluctuated, as borne out by the stock's closing prices on each day throughout the Class Period. (Defendants' Reply Memorandum in Support of Motion to Dismiss at 11–12 & Ex. A; Tr. at 50–51.) However, Defendants' atomistic segmentation does not alter the manifest fact that the stock price plunged over time. Whether the price fluttered downward or dropped linearly, this Court holds that Plaintiffs have alleged a sufficiently precipitous decline in the price of Polaroid stock.

### 2. Knowledge of Impending Collapse

Defendants contend that Plaintiffs have not sufficiently alleged Defendants' knowledge that Polaroid was in a precarious financial condition because the Complaint relies exclusively on the Mandarino Report. Defendants submit that the Mandarino Report does not implicate any Defendants in the alleged misconduct (Def. Mem. at 7–11), and that the Report is inconclusive regarding the impropriety of the accounting issues it analyzed and their effect on the Company's financials (Def.

Mem. at 24 (citing Report at 9, 41–42, 58, 60)). Both arguments are unavailing.

The Complaint alleges that Defendants acted imprudently because they knew of the improper accounting treatments described in the Report, as well as Polaroid's generally deteriorating financial condition. Whether any of the Defendants were actively involved in the accounting misconduct is relevant, if at all, only to scienter. Thus, the fact that the Report omits to mention most Defendants by name is immaterial as long as Defendants had knowledge of the Company's financial situation through means other than personal involvement in the underlying accounting decisions. The Complaint alleges that, "as a consequence of the[ir] high-level positions," the Plan Administrator and Fund Manager Defendants "had access to and thus knowledge of the true state of affairs at Polaroid, and awareness of the serious and substantial problems that caused the Company's bankruptcy." (Compl. ¶ 48; see Compl. ¶ 168, 172, 250.) Such an allegation is sufficient to survive a motion to dismiss. See WorldCom, 263 F.Supp.2d at 767 n. 15.

Defendants also contend that many of the Defendants were not Plan fiduciaries at the time of the incidents described in the Mandarino Report. Naturally, a fiduciary cannot be liable for any breach of fiduciary duty that does not occur on his watch, 29 U.S.C. § 1109(b), and prudence is judged only by contemporaneous circumstances, Katsaros v. Cody, 744 F.2d 270, 279 (2d Cir.1984); see Metzler v. Graham, 112 F.3d 207, 209 (5th Cir.1997). Nonetheless, events occurring either during or before any Defendant's term as a Plan fiduciary may have put that Defendant on notice that Polaroid was in financial trouble. According to the Complaint, the earliest that any Defendant ceased being a Plan fiduciary was mid–2001, and the earliest that any Defendant ceased being in a position to have knowledge of the Company's financial condition was June 2001. (Compl. ¶¶ 20–26, 32–34.) The Mandarino Report concluded that Polaroid's financial condition was in jeopardy as early as the end of 2000. (Report at 9.) Therefore, because the Complaint alleges that the Company's condition declined over the course of the Class Period, Plaintiffs sufficiently allege that all Defendants had notice of Polaroid's infirmity starting in late 2000.

Lastly, it is irrelevant that the Examiner may have tempered his opinion about whether each accounting treatment was technically correct. Ultimately, the Examiner concluded that there existed a strong likelihood at the end of 2000 that Polaroid could not continue as a going concern. (Report at 9.) If true, such a potentiality is sufficiently foreboding to herald the Company's collapse and cause a prudent person to investigate further. Certainly by October 2001, when Polaroid filed for bankruptcy protection, Plan fiduciaries had reason to question the prudence of continued investment in Polaroid stock. Yet the Complaint alleges that "the Plan Administrator and Fund Manager Defendants failed to conduct an appropriate investigation into whether Polaroid Funds and/or Polaroid stock was a prudent investment for the Plan." (Compl. ¶ 171.) The Complaint continues: "An adequate investigation by Defendants would have revealed to a reasonable fiduciary that investment by the Plan in the Polaroid Funds and/or Polaroid stock, under these circumstances, was imprudent." (Compl. ¶ 173.) Thus, the Complaint sufficiently alleges that all Defendants had knowledge of facts which, in light of Polaroid's falling stock price, may have caused a reasonably prudent fiduciary to eliminate the Plan's investments in Polaroid stock as early as December 2000.

As such, Defendants' motion to dismiss Count I is denied.

## IV. *Count II: Failure to Monitor*

■ Count II alleges that DiCamillo breached his fiduciary duty to monitor those whom he appointed and to provide information to them. The Complaint alleges that he "fail[ed] to ensure that the monitored fiduciaries had access to knowledge about the Company's business problems . . . , fail[ed] to ensure that the monitored fiduciaries appreciated the huge risk inherent in the significant investment by rank and file employees in Polaroid stock," and "convey[ed] incomplete and inaccurate information" to them. (Compl.¶¶ 239–40.)

The Complaint adequately pleads DiCamillo was a fiduciary to the extent he exercised discretionary authority over the appointment, retention and removal of Plan Administrators and Fund Managers. (Compl. ¶ 17; Plan §§ 14.1, 14.4.) As discussed above, moreover, the Complaint sufficiently alleges that all Defendants, including DiCamillo, had knowledge of facts which should have caused them to question the prudence of continued investment in Polaroid common stock. (Compl.¶¶ 48, 168, 170, 250.) In fact, the Complaint is even more specific with respect to DiCamillo, alleging that he had personally spoken with KPMG, Polaroid's auditor, about the accounting issues. (Compl.¶ 139.)

An appointing fiduciary's duty to monitor his appointees is well-established. *See Coyne & Delany Co. v. Selman,* 98 F.3d 1457, 1465–66 (4th Cir.1996); *Martin v. Feilen,* 965 F.2d 660, 669–70 (8th Cir. 1992); *Ed Miniat, Inc. v. Globe Life Ins. Group, Inc.,* 805 F.2d 732, 736 (7th Cir. 1986); *In re CMS Energy ERISA Litig.,* 312 F.Supp.2d 898, 916–17 (E.D.Mich. 2004); *WorldCom,* 263 F.Supp.2d at 765. As Judge Cote observed, "When a corporate insider puts on his ERISA hat, he is not assumed to have forgotten adverse information he may have acquired while acting in his corporate capacity." *World-Com,* 263 F.Supp.2d at 765.

As the appointing fiduciary, DiCamillo was "not obliged to examine every action taken by [the appointees], but . . . [he was] obliged to take prudent and reasonable action to determine whether the administrators were fulfilling their fiduciary obligations." *Leigh v. Engle,* 727 F.2d 113, 135 (7th Cir.1984) (holding that the appointing fiduciaries "could not insulate themselves from all fiduciary liability by limiting their roles in the administration of the trust"). The Complaint alleges that DiCamillo failed to take any steps to monitor the other Defendants. (Compl.¶¶ 238–39.) Thus, Plaintiffs' allegation that DiCamillo failed to adequately monitor or keep the Plan Administrators and Fund Managers informed states a claim for breach of fiduciary duty. *See WorldCom,* 263 F.Supp.2d at 765 (claim that the CEO failed to monitor "the Plan's other fiduciaries in connection with the investment of the Plan's assets" states a claim).

## V. *Count III: Failure to Provide Complete and Accurate Information to Participants*

■ Count III of the Complaint alleges that "Defendants breached their duty to disclose information to participants by failing to provide complete and accurate information regarding Polaroid Stock and . . . by creating an inaccurate impression of the future prospects of the Company," even though they "knew or should have known that the information they possessed . . . would have an extreme impact on the Plan." (Compl.¶¶ 249–50.)

While Plaintiffs discern an affirmative duty to disclose non-public information, Defendants argue there is no ERISA duty to disclose beyond the obligation to speak

truthfully when addressing plan participants. (Def. Mem. at 32–33.) Courts are in disagreement concerning the contours of this duty. *Compare Chojnacki v. Georgia–Pacific Corp.,* 108 F.3d 810, 817 (7th Cir.1997) (no duty to disclose unless "a fiduciary fails to give a beneficiary material information regarding a plan and the fiduciary's silence is misleading"); *Pa. Fed. v. Norfolk S. Corp. Thoroughbred Retirement Inv. Plan of the Norfolk S. Corp.,* No. Civ. A. 02–9049, 2004 WL 228685, at *5 (E.D.Pa. Feb. 4, 2004) ("[T]here is very little, short of fraud, that fiduciaries would have an obligation to report."), *with Krohn v. Huron Mem'l Hosp.,* 173 F.3d 542, 547–48 (6th Cir.1999); *Bixler v. Cent. Pa. Teamsters Health & Welfare Fund,* 12 F.3d 1292, 1300 (3d Cir.1993); *Eddy v. Colonial Life Ins. Co. of Am.,* 919 F.2d 747, 750–51 (D.C.Cir.1990); *In re Elec. Data Sys. Corp. ERISA Litig.,* 305 F.Supp.2d 658, 672 (E.D.Tex.2004); *Hill v. BellSouth Corp.,* 313 F.Supp.2d 1361, 1369 (N.D.Ga.2004). *See also Varity Corp. v. Howe,* 516 U.S. 489, 506, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996) (choosing not to "reach the question whether ERISA fiduciaries have any fiduciary duty to disclose truthful information on their own initiative, or in response to employee inquiries"). The Second Circuit has not had occasion to elucidate the scope of an ERISA fiduciaries' duty to disclose non-public information concerning the employer's financial situation. *But see Devlin v. Empire Blue Cross & Blue Shield,* 274 F.3d 76, 88 (2d Cir.2001) (holding that a plan administrator breaches his fiduciary duty when he misrepresents the *terms* of a plan or "fails to provide information when it knows that its failure to do so might cause harm" (quoting *In re Unisys Corp. Retiree Med. Benefit ERISA Litig.,* 57 F.3d 1255, 1264 (3d Cir.1995))).

While the ERISA statute contains no provision specifically embodying an affirmative duty to disclose material non-public information to Plan participants, "the law of trusts often will inform, but will not necessarily determine the outcome of, an effort to interpret ERISA's fiduciary duties." *Varity Corp.,* 516 U.S. at 497, 116 S.Ct. 1065. Under trust law, a trustee "is under a duty to communicate to the beneficiary material facts affecting the interest of the beneficiary which he knows the beneficiary does not know and which the beneficiary needs to know for his protection." Restatement (Second) of Trusts § 173, cmt. d. This Court agrees with those decisions holding that an ERISA fiduciary has both a duty not to make misrepresentations to plan participants, and "an affirmative duty to inform when the [fiduciary] knows that silence might be harmful." *Bixler,* 12 F.3d at 1300; *see Krohn,* 173 F.3d at 548; *Eddy,* 919 F.2d at 750–51; *see also Devlin,* 274 F.3d at 88–89.

Plaintiffs allege that as early as late 2000, Defendants knew that Polaroid's prospects as a going concern were in jeopardy and that investment in its common stock was not prudent. (Compl. ¶¶ 48, 125, 168, 172, 250; *see* Report at 9.) From February to July 2001, Polaroid issued press releases concerning the Company's deteriorating financial condition. (Compl.¶¶ 156–58.) The self-imposed restructuring efforts described in these press releases culminated in a Chapter 11 bankruptcy filing in October 2001. (Compl.¶¶ 119, 157–59, 161.) The Complaint alleges that throughout this period, Defendants "provided incomplete information" and "creat[ed] an inaccurate impression of the future prospects of the Company in Company-wide ... statements regarding the Company." (Compl. ¶¶ 144, 249; *see* Compl. ¶ 252.) According to the Complaint, it was not until December 2001 that Polaroid sent a notice

to ESOP participants alerting them that "[a]n independent valuation advisor hired by the trustee concluded that the [Company's] stock would most likely have no value. As a result, State Street as trustee decided that it was in the best interests of the participants to sell the shares." (Compl.¶ 174.) These allegations are sufficient to state a claim in Count III against Defendants for breach of fiduciary duty based on their failure to keep Plan participants informed of material adverse developments.

## VI. *Count IV: Conflict of Interest*

 The Complaint alleges that Defendants all suffered a conflict of interest with respect to the Plan's large investments in Polaroid stock because they were compensated in Polaroid stock and stock options. (Compl.¶¶ 181–91.) Count IV of the Complaint alleges that Defendants breached their duty of loyalty by "failing to engage independent fiduciaries ...; failing to notify appropriate federal agencies ... of the facts and transactions which made Polaroid Stock an unsuitable investment for the Plan; [and] failing to take such other steps as were necessary." (Compl.¶ 260.)

The Complaint only alleges that DiCamillo and Boynton owned stock. (Compl.¶¶ 181–91.) Plaintiffs' allegation that "a significant percentage of corporate Director and Executive Officer compensation is in the form of stock grants or stock option grants" (Compl.¶ 181) is insufficient to allege a conflict of interest on the part of any other Defendant.

Moreover, with respect to all Defendants including DiCamillo and Boynton, Plaintiffs fail to allege that the conflict of interest impeded their prudent decision-making with respect to the Plan and Plan participants. Plaintiffs allege that Defendants, knowing of the Company's deteriorating financial condition, maintained Plan participants' investments in Polaroid stock. At the same time, the Complaint alleges, Defendants bargained for larger cash bonuses to decrease the percentage of their total compensation that derived from grants of stock and stock options. (Compl.¶¶ 184–89.) Such conduct, even if true, does not suggest that Defendants acted against the interests of Plan participants. Accordingly, because Plaintiffs' conflict-of-interest claim is based purely on the fact that Defendants' compensation was stock-based, it fails to state a claim for breach of fiduciary duty. *See WorldCom*, 263 F.Supp.2d at 768 ("Plaintiffs do not allege that Ebbers's personal investments caused him to take or fail to take any actions detrimental to the Plan while he was wearing his 'fiduciary hat.' ").

## VII. *Co–Fiduciary Liability*

 Lastly, the Complaint alleges that Defendants were liable for the breaches of their co-fiduciaries under Counts I and III. (Compl.¶¶ 226–27, 253.)

The ERISA statute provides that a fiduciary "shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan ... if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach;" if by his own breach he enables another fiduciary to commit a breach; or "if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts ... to remedy the breach." 29 U.S.C. § 1105(a). Defendants argue that the Complaint does not sufficiently allege knowledge of co-fiduciary actions. However, the Complaint closely tracks the statutory language, which is sufficient. (Compl.¶ 226.) *See WorldCom*, 263 F.Supp.2d at 759. The Complaint need not allege specific facts buttressing those claims of knowledge to survive a

motion to dismiss. *See WorldCom,* 263 F.Supp.2d at 767 n. 15. Moreover, fiduciaries may be liable under § 1105(a) even if their co-fiduciary's breach is beyond the scope of their own discretionary authority. *In re WorldCom, Inc. ERISA Litig.,* 354 F.Supp.2d 423, 445 (S.D.N.Y.2005); *see Silverman v. Mut. Benefit Life Ins. Co.,* 138 F.3d 98, 106 (2d Cir.1998) (Jacobs, J., concurring) ("Section 1105(a)(3) provides for extraordinarily broad liability for co-fiduciaries because it requires only that the defendant be a fiduciary of the same *plan* as the breaching fiduciary.").

Accordingly, Plaintiffs have adequately pleaded Defendants' co-fiduciary liability on Counts I and III.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is granted in part and denied in part. Specifically, Count IV of the Amended Consolidated Complaint alleging breach of duty to avoid conflicts of interest is dismissed. In all other respects, Defendants' motion to dismiss is denied.

SO ORDERED.