**In re MORGAN STANLEY
ERISA LITIGATION.**

**No. 07 Civ. 11285(Rws).**

United States District Court,
S.D. New York.

Dec. 9, 2009.

Milberg LLP, by Sanford P. Dumain, Esq., Lori G. Feldman, Esq., Arvind Khurana, Esq., Sara E. Fuks, Esq., Wolf Halderstein Adler Freeman & Herz LLP, by Mark C. Rifkin, Esq., Michael Jaffe, Esq., Kate M. McGuire, Esq., Harwood Feffer LLP, by Robert I. Harwood, Esq., Samuel K. Rosen, Esq., Jennifer Hirsh, Esq., New York, NY, Schiffrin Barroway Topaz & Kessler LLP, by Joseph H. Meltzer, Esq., Edward W. Ciolko, Esq., James Maro, Esq., Radnor, PA, Abraham Fruchter & Twersky LLP, by Jeffrey Abraham, Esq., New York, NY, for Plaintiff.

Davis Polk & Wardwell, by Robert F. Wise, Jr., Esq., Charles S. Duggan, Esq., New York, NY, for Defendants.

## OPINION

SWEET, District Judge.

Defendants Morgan Stanley ("Morgan Stanley" or the "Company"), Morgan Stanley & Co., Inc. ("MS & Co.,") (collectively the "Corporate Defendants"), Karen Jamesley, Morgan Stanley's Global Director of Human Resources ("Jamesley"), John Mack, a member of Morgan Stanley's Board of Directors ("Mack" or the "Morgan Stanley Director Defendant"),[1] members of MS & Co.'s Board of Directors (the "MS & Co. Director Defendants"), and members of the Investment Committee (the "Investment Committee Defendants") (collectively, the "Defendants"), have moved pursuant to Rules 12(b)(6) and 9(b), Fed.R.Civ.P., to dismiss the Consolidated Amended Class Action Complaint (the "Complaint"). On the conclusions set forth below, the motion is denied.

## I. PROCEDURAL HISTORY

This is a consolidated class action brought by participants in the Morgan Stanley 401(k) Plan ("401(k) Plan") and the Morgan Stanley Employee Stock Ownership Plan ("ESOP") (collectively the "Plans") against Defendants for violations of their fiduciary duties under the Employee Retirement Income Security Act of 1974 ("ERISA"). The action was commenced on December 14, 2007, with the

---

1. O. Griffith Sexton, a member of the Morgan Stanley Board of Directors during the Class Period named as a defendant in the Complaint, has since been voluntarily dismissed from this litigation.

filing of a complaint by Plaintiff Carolyn Egan on behalf of herself and all others similarly situated (07 Civ. 11285). Additional complaints were subsequently filed by John Siefken on December 20, 2007 (07 Civ. 11456), C. Kenneth Coulter on December 28, 2007 (07 Civ. 11624), Gregory Major on January 18, 2008 (08 Civ. 496), and Michael Chiecko, Eli Mond, Elena Ramos, Alvin Saini, and John Sudolsky on February 6, 2008 (08 Civ. 1206).

By order of this Court, on February 11, 2008, the above-referenced actions were consolidated pursuant to Fed.R.Civ.P. 42(a) under Docket Number 07 Civ. 11285. Wolf Haldenstein Adler Freeman & Herz LLP, and Milberg Weiss LLP were appointed Interim Co–Lead Class Counsel, and Schiffrin Barroway Topaz & Kessler, LLP, and Harwood Feffer LLP were appointed to the Interim Executive Committee of Class Counsel.[2] The Consolidated Amended Class Action Complaint was filed on July 28, 2008.

Defendants' motion to dismiss the Complaint, filed September 26, 2008, was marked fully submitted on December 23, 2008.

## II. FACTUAL ALLEGATIONS

The following allegations, taken from the Complaint, are accepted as true for the purpose of resolving the motion to dismiss.

### A. *The Parties*

This action is brought by and on behalf of participants in the 401(k) and ESOP Plans, who, as a result of their own or Morgan Stanley's contributions, held Morgan Stanley stock in their individual 401(k) Plan and/or ESOP accounts from August 9, 2006 to the present (the "Class Period").

Defendant Morgan Stanley is a global financial services company headquartered in New York, New York, that provides financial advisory services, investment advisory services, global asset management products and services in equity, fixed income, alternative investments, and private equity to its clients and customers. Morgan Stanley is the "sponsor" of the ESOP, as that term is defined by section 3(16)(B) of ERISA, 29 U.S.C. § 1002(16)(B).

Defendant MS & Co., a wholly owned subsidiary of Morgan Stanley, is a Delaware corporation headquartered in New York, New York. MS & Co. is Morgan Stanley's primary broker-dealer in the U.S. and is part of Morgan Stanley's Global Wealth Management Group. MS & Co. is the "sponsor" of the 401(k) Plan.

During the Class Period defendant Karen Jamesley was Morgan Stanley's Global Director of Human Resources. As such, she served as the "Plan Administrator" for both the 401(k) Plan and the ESOP. *See* 401(k) Plan, Definition; ESOP, Art. 1.34.

Morgan Stanley Director Defendant John J. Mack was, at all times during the Class Period, Morgan Stanley's Chief Executive Office ("CEO") and its Chairman of the Board.

MS & Co. Director Defendants Walid A. Chammah, Charles Chasin, Zoe Cruz, Richard Portogallo, James P. Gorman, Neal A. Shear, and Cordell G. Spencer, were, during the Class Period, members of the Board of Directors of MS & Co.

During the Class Period, management of the Plans was in the hands of the Investment Committee, members of which were appointed by and served at the pleasure of the MS & Co. Director Defendants. Under the terms of the Plans, the Investment

---

**2.** The Court also declined to appoint an Interim Lead Plaintiff, finding it unnecessary at that time.

Committee consisted of no fewer than three persons, each of whom was an employee and/or advisory director of Morgan Stanley or MS & Co. Investment Committee Defendants Michael Rankowitz, Thomas C. Schneider, Michael T. Cunningham, R. Bradford Evans, Kirsten Feldman, Edmund C. Puckhaber, and William B. Smith served as members of the Investment Committee during all or part of the Class Period.

Plaintiffs' Complaint also names unknown "John Doe" Defendants 1–10, individuals including members of the Investment Committee and officers, directors and employees of Morgan Stanley and MS & Co., who have been fiduciaries of the Plans during the Class Period, but whose identities are currently unknown to Plaintiffs.

## B. *The Plans*

The Plans are retirement plans operated and established by Morgan Stanley as a benefit for its employees to permit tax-advantaged savings for retirement and other long-term goals. Each Plan is an "employee pension benefit plan," as defined by § 3(2)(A) of ERISA, 29 U.S.C. § 1002(2)(A).

### 1. The 401(k) Plan

The 401(k) Plan is a "defined contribution plan" within the meaning of ERISA § 3(34), 29 U.S.C. § 1002(34). Employees who work at least 20 hours per week are eligible to participate in the 401(k) Plan at the commencement of their employment. Individual accounts are maintained for each 401(k) Plan participant, and each participant's account is credited with employee contributions, Company contributions, and the 401(k) Plan's earnings, and charged with the allocation of investment losses and administrative expenses not otherwise paid by Morgan Stanley.

Contributions to the 401(k) Plan are allocated among the available investments as selected by the participant from among the investments designed by the Investment Committee. As of December 31, 2007, there were 27 investment vehicles available for selection in the 401(k) Plan, including a fund consisting solely of Company Stock.

Plan participants with an annual salary of less than $200,000 per year are eligible for Morgan Stanley's matching program. The Company matches dollar for dollar value up to six percent of an employee's pre-tax eligible pay for the first $2,000 of eligible pre-tax contributions, and 50 cents per dollar for each additional dollar of eligible pre-tax contributions. The Company also may make other contributions, including a discretionary profit sharing contribution, the amount of which varies from year to year, and a "retirement contribution" for employees hired after June 30, 2007, who have worked at Morgan Stanley for at least one year.

Participants in the 401(k) Plan can elect to make contributions on a pre-tax basis through payroll deductions up to a predetermined limit. Employees can also elect to contribute a certain percentage of eligible compensation in after-tax dollars up to an annual maximum. Participants are always 100% vested in contributions to the 401(k) Plan made from their eligible compensation and in the earnings thereon.

### 2. The ESOP

All employees regularly scheduled to work at least twenty hours per week are also eligible to participate in the ESOP. Participants make contributions to the ESOP through their contributions to the 401(k) Plan, and all investments in Company Stock are transferred to the ESOP.

Section 6(f) of the 401(k) Plan provides that "Company Contributions to the Plan for a Plan Year shall be made in the form of cash unless the Company [MS & Co.] determines that any and all such contribu-

tions shall be made in the form of Company Stock." During the Class Period, all Company contributions were made exclusively in Company Stock and made to the ESOP.

As of January 1, 2007, restrictions on the transfer of holdings of Company Stock in the ESOP attributable to Company Contributions were loosened. Now participants over 55 or with three years service can fully transfer all such holdings, and participants under age 55 with at least three years of service can transfer such holdings allocated to their accounts after January 2007, and can transfer all such holdings allocated to their accounts before January 2007 in accordance with a schedule provided in the 2007 Summary Plan Description ("SPD").

Participants in the Plans hired on or after January 1, 2004 become vested in Company Contributions and earnings thereon in the ESOP upon the earlier of the completion of three years of service, or termination of employment due to death, total and permanent disability, retirement, or release, as defined in the 401(k) Plan.

*Plaintiff's Allegations*

The Complaint alleges that Defendants, "fiduciaries" of the Plans, breached their duties to the Plans and participants and beneficiaries of the Plans during the Class Period in violation of ERISA §§ 404(a) and 405, 29 U.S.C. §§ 1104(a) and 1105. Specifically, the Complaint alleges that Morgan Stanley, under Mack's leadership, dramatically increased the Company's exposure to risky credit assets with little or no price transparency. According to the Complaint, this approach was approved of and supported by the Plans' fiduciaries. The Complaint further alleges that Mack's risky management style was not properly suited for Morgan Stanley because the Company lacked adequate risk management and internal controls.

On August 9, 2006, the first day of the proposed Class Period, Morgan Stanley announced the signing of a definitive merger agreement with Saxon Capital, Inc. ("Saxon"), a servicer and originator of residential mortgages. This acquisition was intended to provide Morgan Stanley with access to subprime mortgages that could then be repackaged into complex investment vehicles. In addition to providing Morgan Stanley with servicing and securitization income during the first half of 2007, the Complaint alleges that by acquiring Saxon, the Company was also provided with first-hand knowledge of the deterioration, risks and fraudulent practices in the subprime lending market. Specifically, the Complaint alleges that despite public assurances to the contrary, Defendants knew or should have known that the Company lacked the information technology systems and internal controls necessary to assess and properly report the risk associated with Morgan Stanley's subprime exposure.

Despite repeated warnings throughout 2006 and 2007 that the subprime market was deteriorating, the Complaint alleges that Morgan Stanley continued investing in mortgage backed securities, and continued to make reassurances that it had sufficient internal controls to manage its risk. By August 2007, it is alleged that Defendants knew or should have known that the Company would be forced to take multibillion dollar writedowns as a result of its derivatives exposure. According to Plaintiffs, Defendants failed to properly disclose this information. By December 2007, the Company reported a total of $9.4 billion of writedowns related to mortgages.

During this time, the price of Morgan Stanley stock declined from over $85 per share in early 2007 to $36.75 per share on July 25, 2008.

According to the Complaint, both Plans were heavily invested in Morgan Stanley common stock and/or units of a fund that was heavily invested in Morgan Stanley common stock (collectively, "Company Stock") during the Class Period. Company records show that in 2006, Company Stock comprised approximately $4 billion of the approximate $7.3 billion in total assets held by the Plans, well over 50% of the Plans' total assets.

## III. THE APPLICABLE LEGAL STANDARDS

### A. *Rule 12(b)(6)*

On a motion to dismiss pursuant to Rule 12, all factual allegations are accepted as true, and all inferences are drawn in favor of the pleader. *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1174 (2d Cir.1993). The issue "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir.1995) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 235–36, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)).

However, while the pleading standard set forth in Rule 8 of the Fed.R.Civ.P. is a liberal one,

> the pleading standard Rule 8 announces ... demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusion or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.

*Ashcroft v. Iqbal*, —— U.S. ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (internal cites and quotes omitted). Thus, a complaint must allege sufficient factual matter to "state a claim to relief that is plausible on its face." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570,

127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). In meeting this "plausibility standard," the plaintiff must demonstrate more than a "sheer possibility" of unlawful action; pleading facts that are " 'merely consistent with' a defendant's liability ... 'stops short of the line between possibility and plausibility of entitlement to relief.' " *Id.* (quoting *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955); *see also Reddington v. Staten Island Univ. Hosp.*, 511 F.3d 126, 131 (2d Cir.2007) ("Although the pleading standard is a liberal one, bald assertions and conclusions of law will not suffice. To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient to raise a right to relief above the speculative level." (internal quotes and cites omitted)); *Gavish v. Revlon, Inc.*, No. 00–CV–7291, 2004 WL 2210269, at *10 (S.D.N.Y. Sept. 30, 2004) ("[B]ald contentions, unsupported characterizations, and legal conclusions are not well-pleaded allegations and will not defeat a motion to dismiss.").

### B. *Fiduciary Status Under ERISA*

To state a claim for breach of fiduciary duty under ERISA, at minimum the Complaint must allege 1) that defendant was a fiduciary who, 2) was acting within his capacity as a fiduciary, and 3) breached his fiduciary duty. *See* ERISA § 409, 29 U.S.C. § 1109; *In re AOL Time Warner, Inc. Sec. and "ERISA" Litig.*, No. 02–CV–8853, 2005 WL 563166, at *3 (S.D.N.Y. Mar. 10, 2005).

ERISA requires every employee benefit plan to provide for one or more named fiduciaries who possess the "authority to control and manage the operation and administration of the Plan." ERISA § 402(a)(1), 29 U.S.C. § 1102(a)(1). The individual named as the "administrator" in the plan instrument is automatically a named fiduciary, and in the absence of such a designation, the "sponsor" of the

plan is considered the administrator of the plan and thereby the named fiduciary. ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A).

In addition to named fiduciaries, ERISA also defines fiduciaries "in *functional* terms of control and authority over the plan." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993) (emphasis in original). The statute provides that any individual is a fiduciary to the extent that he or she "exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets," or "has any discretionary authority or discretionary responsibility in the administration of such plan." ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).

■ Although this definition of a fiduciary is "to be broadly construed," *LoPresti v. Terwilliger*, 126 F.3d 34, 40 (2d Cir. 1997) (internal quotation marks omitted),

> [t]he 'threshold question' in an action charging breach of a fiduciary duty under ERISA 'is not whether the actions of some person employed to provide services under a plan adversely affected a plan beneficiary's interest, but whether that person was acting as a fiduciary (that is, performing a fiduciary function) when taking the action subject to complaint.'

*In re WorldCom, Inc.*, 263 F.Supp.2d 745, 757 (S.D.N.Y.2003) (citing *Pegram v. Herdrich*, 530 U.S. 211, 226, 120 S.Ct. 2143, 147 L.Ed.2d 164 (2000)).

■ ERISA assigns fiduciaries "a number of detailed duties and responsibilities, which include the proper management, administration, and investment of [plan] assets, the maintenance of proper records, the disclosure of specified information, and the avoidance of conflicts of interest." *Mertens*, 508 U.S. at 252–53, 113 S.Ct.

2063 (internal quotation and citation and quotation marks omitted). Once again, these obligations are statutorily determined:

> [A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—(A) for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan; (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims; (C) by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III of this chapter.

29 U.S.C. § 1104(a)(1); *see Mertens*, 508 U.S. at 251, 113 S.Ct. 2063 (describing ERISA as a "comprehensive and reticulated statute"). Section 409(a), 29 U.S.C. § 1109(a), makes fiduciaries liable for breach of these duties.

## IV. PLAINTIFFS HAVE SUFFICIENTLY PLED THE FIDUCIARY STATUS OF DEFENDANTS

Defendants argue that the Complaint fails to allege the fiduciary status of Defendants, with the exception of Jamesley, with respect to any claim. This argument fails with respect to all Defendants.

### A. *The Corporate Defendants*

According to Defendants, the Complaint fails to adequately allege that either Mor-

gan Stanley or MS & Co. is a named or de facto fiduciary.

Both the 401(k) and the ESOP Plans appoint Morgan Stanley's Global Director of Human Resources, or his or her delegate, a named fiduciary of the Plans. *See* 401(k) Plan, §§ 2, 14(a); ESOP Art. 1.34, 9.01. Plaintiffs argue that the Company itself is a "named fiduciary" because "a corporation can only act through its agents," and that when an employer is a fiduciary insomuch as it acts as one. Alternatively, Plaintiffs allege that any breaches of fiduciary duty by the named fiduciary are imputed to Morgan Stanley under the doctrine of respondeat superior.

Plaintiffs refer to *Mertens* as supporting the proposition that "fiduciary duties attach to the actions of an employer 'to the extent that they function in their capacity as plan administrators,' " Pl. Br. in Opp'n. at 30, but *Mertens* does not include the language Plaintiffs quote. Instead, that language is found in *Amato v. Western Union Intern., Inc.,* 773 F.2d 1402, 1416 (2d Cir.1985), and is stated in support of the idea that an employer *may* wear "two hats" as both a corporate employer and a plan fiduciary, not that they are automatically considered fiduciaries as the Plaintiffs suggest. Moreover, they have stated no case law for their proposition that the status of the Global Director of Human Resources as a "named fiduciary" makes the Company a "named fiduciary" under ERISA.

■ While corporations may act through agents, not every action of a corporate employee can be attributed to the corporation. In the ERISA context, a company does not become a fiduciary merely because its employee is a fiduciary. *See, e.g., In re AOL Time Warner,* 2005 WL 563166, at *4 n. 5 (refusing to permit claims against the corporation because "ERISA imposes liability only upon named fiduciaries and de facto fiduciaries who exercise actual or discretionary control or authority over the management or disposition of plan assets," and imputing responsibility to the corporation as an entity would contravene Congressional intent not to authorize "other remedies that it simply forgot to incorporate expressly"), *Crowley v. Corning, Inc.,* No. 02–CV–6172, 2004 WL 763873, at *5 (W.D.N.Y. Jan. 14, 2004) ("*Crowley II* ") (the allegation that "Corning employees provided access to management functions for the Plan Participants to enable them to manage or dispose of Plan assets ... gave participants access to analytical tools and models, valued their Plan assets every twenty minutes, and provided all information relating to the Plan ... fail to show that Corning or the Board was a fiduciary of the Plan."); *In re Williams Cos. ERISA Litig.,* 271 F.Supp.2d 1328, 1338 (N.D.Okla.2003) ("Williams, as settlor or sponsor of the Plan, does not act as a fiduciary.").

■ Here, fiduciary responsibility on the part of Morgan Stanley based on a respondeat superior theory is not established in view of the split of authority over whether ERISA provides for such a cause of action. *In re Xerox Corp. ERISA Litig.,* 483 F.Supp.2d 206, 222 n. 5 (D.Conn. 2007) (collecting cases); *In re Coca–Cola Ents. Inc., ERISA Litig.,* 06–CV–953, 2007 WL 1810211, at *13 (N.D.Ga. June 20, 2007) (same). *Compare In re AOL Time Warner,* 2005 WL 563166, at *4 n. 5 (refusing to find the employer liable under ERISA according to a theory of respondeat superior); *Crowley ex rel. Corning Investment Plan v. Corning, Inc.,* 234 F.Supp.2d 222, 228–29 (W.D.N.Y.2002) ("*Crowley I* ") (rejecting respondeat superior liability under ERISA); and *Woods v. S. Co.,* 396 F.Supp.2d 1351, 1370 n. 10 (N.D.Ga.2005) (noting the "absence of any express contemplation of such a theory within the text or legislative history of the

statute"); *with Hamilton v. Carell,* 243 F.3d 992, 1002–03 (6th Cir.2001) (the doctrine of respondeat superior may be a source of liability in ERISA cases where the employee was acting in the course of his employment and breached his duty to a third party); *Kling v. Fidelity Mgmt. Trust Co., et al.,* 323 F.Supp.2d 132, 145–47 (D.Mass.2004) (same and collecting cases); *American Fed'n of Unions Local 102 Health & Welfare Fund v. Equitable Life Assur. Soc.,* 841 F.2d 658, 665 (5th Cir. 1988) (suggesting that an employer may be vicariously liable only if it actively and knowingly participated in the employee's breach of fiduciary duties); *National Football Scouting, Inc. v. Continental Assurance Co.,* 931 F.2d 646, 649–50 (10th Cir. 1991) (agency under ERISA is a question of fact).

■ Plaintiffs have, however, alleged sufficient facts to establish, at the pleading stage, that Morgan Stanley is a de facto fiduciary under ERISA. Specifically, the Complaint alleges that Morgan Stanley exercised the necessary control over the Plans in determining whether to fund Employer Contributions in Company Stock rather than cash, and by establishing rules regarding the transfer of Company Stock into other forms of investment in the Plans. Am. Compl. ¶ 46. Defendants argue that the first of these powers is not a fiduciary function because in either case, the ESOP dictates that the Company's contributions "shall be invested in shares of Company Stock." However, the decision as to how to fund Employer Contributions, which amounted to tens of millions of dollars during the Class Period, is an exercise of "discretionary authority or control," and as such, bestows fiduciary status on Morgan Stanley.

As for MS & Co., Defendants again contest Plaintiffs' allegations of fiduciary status under both respondeat superior and de facto fiduciary theories. Having declined to impute fiduciary status of Morgan Stanley under a respondeat superior theory, the doctrine will not be applied to MS & Co. However, Plaintiffs' allegations that, like Morgan Stanley, MS & Co. approved the funding of Employer Contributions to the ESOP in Company stock, is sufficient to establish its status as a de facto fiduciary.

**B.** ***Morgan Stanley Director Defendant Mack***

■ Plaintiffs and Defendants make the same arguments with regard to Morgan Stanley Director Defendant Mack as to the Corporate Defendants—that he made decisions about whether or not to fund the ESOP with cash or stock, and they differ as to whether or not this is a fiduciary function. The analysis applied above to Morgan Stanley and MS & Co's authority to control the form in which the ESOP was funded also applies to Morgan Stanley Director Defendant Mack. Therefore the Plaintiffs have sufficiently alleged his fiduciary status.

**C.** ***MS & Co Board Member Defendants***

■ Defendants also contend that the MS & Co. Board Member Defendants are also not fiduciaries. The de facto fiduciary duties Plaintiff allege in connection with the MS & Co. Directors are two-fold: 1) power and responsibility to appoint, monitor and replace members of the Investment Committee; and 2) authorized funding of Employer Contributions in Company Stock. The right to appoint and remove fiduciaries is insufficient to constitute fiduciary status. *See In re Polaroid ERISA Litigation,* 362 F.Supp.2d 461, 473 (S.D.N.Y.2005); *In re WorldCom, Inc.,* 263 F.Supp.2d 745, 760–61 (S.D.N.Y.2003); *Crowley I,* 234 F.Supp.2d at 229 (dismissing claim that "defendants imprudently continued to offer participants the ability

to invest their plan funds in [company] stock" because "the Board did not control investment options;" the only power the Board had under the Plan was "to appoint, retain or remove members of the Committee"). However, in alleging that the MS & Co. Board Member Defendants "directed and permitted Company Contributions to the Plans be paid to the Trustee of the Plans in either case or Company stock," Am. Compl. ¶ 52, Plaintiffs have sufficiently pled the fiduciary status of those defendants.

### D. Investment Committee Defendants

■ Finally, Plaintiffs allege that the Investment Committee was a "named fiduciary" of the 401(k) Plan under ERISA 402(a)(2), as well as a de facto fiduciary. Defendants claim that the Investment' Committee had no fiduciary responsibility whatsoever with respect to ESOP, and that their fiduciary responsibilities to the 401(k) Plan did not include selecting and monitoring Company Stock because Company Stock was required to be offered to 401(k) Plain participants. As discussed in Sections V(A) and (B), *infra*, a fiduciary may be obliged to disregard plan documents to the extent that they conflict with fiduciary duties under ERISA, and at this stage in the proceedings the presumption that investment in company stock according to such documents is prudent is not controlling. Therefore, Plaintiffs' assertion that the Investment Committee had discretion not to invest in Company Stock is sufficient allegation of their fiduciary status at this time.

## V. PLAINTIFFS HAVE ADEQUATELY ALLEGED DEFENDANTS' FAILURE TO PRUDENTLY AND LOYALLY MANAGE THE PLANS' ASSETS

Plaintiffs' first cause of action alleges that Defendants breached their fiduciary duties of prudence and loyalty by continuing to offer Company Stock as a 401(k) Plan investment option, maintaining the Plans' heavy investment in Company Stock, continuing to fund Matching and Profit Sharing contributions to the Plans in the form of Company Stock, and maintaining restrictions on the transfer of Company Stock into other investment vehicles throughout the Class Period.

### A. Plaintiffs Allegations are Adequate That Defendants May Not Rely On Language of the Plan to Avoid Fiduciary Duty of Prudence

■ Defendants argue that since both Plans required investment in company stock, the Plan fiduciaries had no discretion with respect to plan investments and therefore cannot be charged with breach of fiduciary duty for continuing plan investments in company stock. Some courts have held that this lack of discretion insulates plan fiduciaries from liability in investing in the stock which the plan indicates shall make up the fund's investments. *See Crowley II*, 2004 WL 763873, at *10 (W.D.N.Y. Jan. 14, 2004) ("[T]he Plan does not give the fiduciaries any discretion with regard to investments in company stock. Consequently, the Plan creates no potential for fiduciary liability with regard to investments in [company] stock."); *Pedraza v. Coca–Cola Co.*, 456 F.Supp.2d 1262, 1273–74 (N.D.Ga.2006) ("no exercise of fiduciary duty was implicated" where plan "specifically required that only Coca–Cola stock be supplied to the ESOP, and required that Coca–Cola stock be offered as one of the choice-of-investment options").

However, Plaintiffs have pointed out that ERISA requires fiduciaries to act "in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent

with the provisions of this subchapter," 29 U.S.C. § 1104(a)(1)(D), and that courts in this District and others have pointed to this parameter as grounds for finding the fiduciaries liable even when the Plan does not appear to give them discretion to make certain investment decisions. *See In re Polaroid ERISA Litigation*, 362 F.Supp.2d 461, 473–74 ("ERISA commands fiduciaries to obey Plan documents only to the extent that they are consistent with other fiduciary duties .... The fact that the Plan required investments in [company] stock does not ipso facto relieve [Defendants] of their fiduciary obligations." (internal citation and quotation marks omitted)); *Harris Trust & Sav. Bank v. John Hancock Mut. Life Ins. Co.*, 83–CV–5401, 1997 WL 278116, at *2, 1997 U.S. Dist. LEXIS 7234, at *4 (S.D.N.Y. May 22, 1997) ("An ERISA fiduciary cannot 'hide' behind the terms of a contract to insulate itself from liability for breaching its fiduciary duty."). *See also In re Ford Motor Co. ERISA Litig.*, 590 F.Supp.2d 883, 889 (E.D.Mich.2008) ("Indeed, ERISA would be almost impotent if it permitted settlers to exempt their fiduciaries from its requirements with a simple stroke of the pen.").

In light of the allegations that Plaintiffs "invested Employer Contributions in the form of Company Stock in the ESOP, at a time when Morgan Stanley was extremely vulnerable due to its undisclosed risky investments [in the subprime mortgage, collateralized debt obligation, and secured investment vehicle markets], and [that Morgan Stanley's] stock price was inflated and almost certain to decline," Def. Br. in Opp'n. at 9, the Plaintiffs have "raise[d their] right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir.2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007)).

## B. The Moench Presumption Does Not Apply At the Motion To Dismiss Stage

Defendants also contend that Plaintiff's allegations do not meet the high pleading standard required to claim that plan fiduciaries breached their fiduciary duties by investing in company stock and that Plan fiduciaries are entitled to a presumption that it is prudent to invest ESOP assets in company stock and to permit 401(k) plan participants to invest in company stock funds, and that that presumption can only be overcome by an allegation that "a company is on the brink of collapse." *In re Coca-Cola Enters. Inc., ERISA Litig.*, No. 06–CV–953, 2007 WL 1810211, at *10 (N.D.Ga. June 20, 2007)

In *Moench v. Robertson*, 62 F.3d 553 (3d Cir.1995), the Third Circuit held that "an ESOP fiduciary who invests the assets in employer stock is entitled to a presumption that it acted consistently with ERISA by virtue of that decision." *Id.* at 571. This presumption of prudent investment, often called the *"Moench* presumption," has been applied widely by the courts of appeal, as well as by district courts in the Second Circuit. *See e.g., Kirschbaum v. Reliant Energy*, 526 F.3d 243, 254–56 (5th Cir.2008); *Pugh v. Tribune Co.*, 521 F.3d 686, 701 (7th Cir.2008); *Edgar v. Avaya, Inc.*, 503 F.3d 340, 345–49 (3d Cir.2007); *Kuper v. Iovenko*, 66 F.3d 1447, 1459 (6th Cir.1995); *In re Polaroid ERISA Litig.*, 362 F.Supp.2d 461, 474 (S.D.N.Y.2005); *Crowley II*, 2004 WL 763873, at *6–8, *12–13. The presumption of prudence has been applied not only to plan investments in company stock but also offerings of company stock funds to 401(k) plan participants. *See, e.g., In re Polaroid*, 362 F.Supp.2d at 474 (presumption applies "with equal force to 401(k) plans requiring that the employer's stock be an investment option"); *In re WorldCom, Inc.*, 263

F.Supp.2d 745, 764 (S.D.N.Y.2003) (applying *Moench* presumption where 401(k) plan was at issue).

When the presumption applies, it can only be overcome by allegations that the company's stock was at risk of being rendered effectively worthless. *See, e.g., Kirschbaum,* 526 F.3d at 255 (plaintiffs failed to rebut *Moench* presumption because there was "no indication that [the company's] viability as a going concern was even threatened, nor that [its] stock was in danger of becoming essentially worthless"); *Edgar,* 503 F.3d at 348 (affirming dismissal on grounds that only a "dire situation" would require fiduciary "to disobey the terms of the Plans by not offering the [company stock fund] as an investment option, or by divesting the Plans of [company] securities"); *In re Coca–Cola,* 2007 WL 1810211, at *10 (N.D.Ga. June 20, 2007) (maintaining that the *Moench* presumption is rebutted only when "a company is on the verge of financial collapse"); *In re Duke Energy ERISA Litig.,* 281 F.Supp.2d 786, 794–95 (W.D.N.C.2003) (prudence claim not viable where "dire circumstances" or "impending collapse" not alleged).

However, district courts in the Second Circuit and elsewhere have viewed the presumption of prudence inappropriate for resolution on a motion to dismiss. *See, e.g., In re Pfizer, Inc. ERISA Litig.,* No. 04–CV–10071, 2009 WL 749545, at *11 (S.D.N.Y. Mar. 20, 2009); *Agway, Inc. Employees' 401(K) Thrift Investment v. Magnuson,* No. 03–CV–1060, 2006 U.S. Dist. LEXIS 74670, at *73–74 (N.D.N.Y July 13, 2006). *See also In re Enron Corp. Sec., Derivative & ERISA Litig.,* 284 F.Supp.2d 511, 534 n. 3 (S.D.Tex.2003) ("A determination as to whether an ESOP fiduciary breached its fiduciary duty should not be made on a motion to dismiss, but only after discovery develops a factual record."); *In re Ferro Corp. ERISA Litig.,*

422 F.Supp.2d 850, 860 (N.D.Ohio 2006) ("The Court has serious doubts as to whether it is appropriate to evaluate the *Moench* presumption [on a motion to dismiss for failure to plead claims]"). *But see In re Citigroup ERISA Litig.,* No. 07–CV–9790, 2009 WL 2762708, at *16 (S.D.N.Y. Aug. 31, 2009) (applying the *Moench* presumption but acknowledging that "[t]he Second Circuit has not yet determined whether courts in this Circuit should apply [it]"). The reasoning of cases that have found it inappropriate to dismiss a claim of mismanagement without giving the Plaintiffs a chance to overcome the presumption is persuasive and the *Moench* presumption will not be applied at this stage.

### C. *ERISA Section 404(c) Does Not Insulate Defendants from Facing Liability for Breach of Fiduciary Duty*

Finally, Defendants claim that section 404(c) of ERISA shields them from liability for investment in Morgan Stanley stock. Section 404(c) provides a limited exception to fiduciary's liability where a participant has been deemed to have exercised full control over investment decisions. Defendants argue that since plan participants have individual accounts and because they affirmatively selected to invest in the Morgan Stanley stock fund, and after a certain period of time can elect to transfer their Morgan Stanley stock into other options, plan fiduciaries have no duty to protect plan participants. However, the Department of Labor was clear—in fact, it "emphasize[d]"—that § 404(c) would not be available to fiduciaries disclaiming liability for "the act of designating investment alternatives ... All of the fiduciary provisions of ERISA remain applicable to both the initial designation of investment alternatives and investment managers and the ongoing determination that such alternatives and managers remain suitable and

prudent investment alternatives for the plan." Final Regulation Regarding Participant Directed Individual Account Plans (ERISA § 404(c) Plans), 57 Fed. Reg. 46906, 46922 (Oct. 13, 1992) (29 C.F.R. at 2550). The regulation is controlling.

## VI. PLAINTIFFS HAVE ADEQUATELY STATED A CLAIM FOR DEFENDANTS' FAILURE TO PROVIDE COMPLETE INFORMATION, AND FOR DEFENDANTS' BREACH OF FIDUCIARY DUTY BY PROVIDING MISLEADING INFORMATION

Plaintiffs' second cause of action alleges that Defendants breached their fiduciary duty of loyalty by misrepresenting and failing to communicate complete and accurate information to the Plans' participants with respect to Morgan Stanley's major credit problems, risk management, and internal control failures. Their allegations are adequate to state a claim for a breach of the fiduciary duty to disclose under ERISA.

### A. *ERISA Imposes An Obligation to Provide the Information That Plaintiffs Claim Should Have Been Disclosed*

The Second Circuit Court of Appeals has not spoken directly to the issue of whether ERISA fiduciaries have an obligation to disclose information not otherwise available to the public about corporate developments that might have an impact on the value of company stock. According to the statute itself, the disclosure obligation to plan participants is limited to information about benefit plans and enrollment, benefit statements, plan expenses, rules governing the plan, and related details. *See* 29 U.S.C. § 1021(a). However, beyond that, courts have held that fiduciaries have a duty to be honest in any communications that they make to participants in a fiduciary

capacity, and "an affirmative duty to inform when the [fiduciary] knows that silence might be harmful." *Adams v. Freedom Forge Corp.*, 204 F.3d 475, 492 (3d Cir.2000) (defendants allegedly induced plan participants to retire early with oral assurances of lifetime benefits coverage) (internal quotation marks and citation omitted); *see Varity v. Howe*, 516 U.S. 489, 506, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996) ("[L]ying is inconsistent with the duty of loyalty owed by all fiduciaries and codified in 29 U.S.C. 1104(a)(1)." (internal citations and quotation marks omitted)); *Anweiler v. Am. Elec. Power Serv. Corp.*, 3 F.3d 986, 991 (7th Cir.1993) (where defendants allegedly induced plaintiff's husband to designate disability insurer as beneficiary of group life policy, court held that fiduciaries must communicate material facts affecting the interests of beneficiaries); *Broga v. Northeast Utils.*, 315 F.Supp.2d 212, 244 (D.Conn.2004) (holding that an affirmative disclosure obligation arises when the employer knows that its past statements are no longer correct).

Defendants contend that requiring the disclosure of inside Company information would require them to violate securities laws in order to satisfy fiduciary duties. Def. Mem. at 17 n. 5. However, Courts have regularly rejected this argument as a justification for avoiding fiduciary duties under ERISA. *See, e.g., In re Xcel Energy, Securities, Derivative & ERISA Litig.*, 312 F.Supp.2d 1165, 1181–82 (D.Minn. 2004); *In re Electronic Data Systems Corp ERISA Litig.*, 305 F.Supp.2d 658, 673 (E.D.Tex.2004); *In re Enron Corp. Sec., Derivative, & ERISA Litig.*, 284 F.Supp.2d 511, 564–65 (S.D.Tex.2003). In *In re WorldCom, Inc.*, 263 F.Supp.2d 745 (S.D.N.Y.2003), the Honorable Denise L. Cote held that, while the defendants had argued that a tension existed between obligations under ERISA and securities laws,

[t]heir arguments, however, cannot undermine the soundness of the general principle underlying [the disclosure claim] that ERISA fiduciaries cannot transmit false information to plan participants when a prudent fiduciary would understand that the information was false. Nor is there anything in [the disclosure claim] ... that required ERISA fiduciaries to convey non-public material information to Plan participants. What is required is that any information that is conveyed to participants be conveyed in compliance with the standard of care that applies to ERISA fiduciaries.

*Id.* at 767. *See Edgar v. Avaya, Inc.,* 503 F.3d 340, 350 (3d Cir.2007) (noting that potential liability under securities laws for divesting plans of company stock based on information that was not publicly available "does not ... mean that the federal securities laws relieve fiduciaries of their obligations under ERISA."); *In re Ferro Corp. ERISA Litig.,* 422 F.Supp.2d 850, 863 (N.D.Ohio 2006) (wherein the court noted alternative courses of action to disclosure of non-public information that a fiduciary could follow to comply with both ERISA and securities law obligations).

## B. *Plaintiffs Have Sufficiently Alleged That Public Filings Are ERISA Communications*

■ Plaintiffs allege that Defendants spoke to participants in SEC filings and made misleading statements or otherwise made statements that required them to disclose information about the Company's financial condition or investments. Defendants argue that any allegedly misleading statements made by Defendants are not actionable under ERISA because disclosures made in a corporate capacity are not fiduciary communications subject to ERISA's obligations.

The distinction between corporate disclosures and ERISA communications was explained by the Fifth Circuit in *Kirschbaum v. Reliant Energy, Inc.,* 526 F.3d 243, 256–57 (5th Cir.2008). In that case, as in this one, the plaintiffs argued that the defendants had violated ERISA because statements in the company's SEC filings were purportedly incomplete and inaccurate. The Fifth Circuit rejected that position and affirmed that the plaintiffs could not prove their disclosure claim because they had failed to raise any issue as to whether "defendants were acting in anything other than a corporate capacity in making these statements." *Id.* at 257. The court found no duty under ERISA to correct statements made purely in a corporate capacity. *See id.; Marks v. Newcourt Credit Group,* 342 F.3d 444, 454 n. 2 (6th Cir.2003) (challenged statements actionable only when they relate to plan benefits); *Stein v. Smith,* 270 F.Supp.2d 157, 173 (D.Mass.2003) (no possible fiduciary liability for statements made in releases and SEC filings because they were not made to plan participants specifically or in the context of discussing plan benefits); *In re Calpine Corp. ERISA Litig.,* No. 03–CV–1685, 2005 WL 3288469, at *9 (N.D.Cal. Dec. 5, 2005) (granting motion to dismiss where plaintiff could not allege that statements were made in a fiduciary capacity or provided directly to plan participants, even though the alleged misrepresentation "turned out to have an adverse impact on the plan").

However, the Complaint alleges that the SEC filings were actionable because they were incorporated in the SPD. See, e.g, Compl. ¶ 49. In *Varity Corp. v. Howe,* 516 U.S. 489, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996), the Supreme Court laid out the standard for when apparently corporate disclosures could carry fiduciary liability under ERISA. The Court found that when the company under examination had held a conference and spoken directly to employees about the company's plan and

their plan benefits that it had fiduciary responsibility for those communications, in view of "the factual context in which the statements were made, combined with the plan-related nature of the activity." *Id.* at 503, 116 S.Ct. 1065. *Varity* therefore requires an analysis of the context in which the communications were made before determining whether corporate documents may carry fiduciary liability. According to the facts alleged in this case, Morgan Stanley's SEC filings were incorporated by reference in Plan documents. Compl. ¶¶ 46, 49, 172. Such incorporation has frequently been held to trigger fiduciary responsibility for the contents of such filings. *See In re Honeywell Int'l ERISA Litig.,* 2004 WL 3245931, at *9, 2004 U.S. Dist. LEXIS 21585, at *29 (D.N.J. Sept. 14, 2004) (plaintiffs stated a claim for breach of fiduciary duty through misrepresentations and non-disclosure when the SPD incorporated SEC filings by reference, the fiduciaries who "issued the SPD[ ] took responsibility for the truthfulness of the SEC disclosures that had been filed previously; and they also took on a duty to correct later SEC disclosures to the extent that they knew (or even, perhaps, should have known) that those statements were false"); *In re Sprint Corp. ERISA Litig.,* 388 F.Supp.2d 1207, 1226–27 (D.Kan.2004) (claim for fiduciary liability for breach of duty to disclose was not dismissed when claim was based on SEC filings that were incorporated into the SPD); *see also In re Schering–Plough Corp. ERISA Litig.,* No. 03–CV–1204, 2007 WL 2374989, at *7, 2007 U.S. Dist. LEXIS 59708, at *18 (D.N.J. Aug. 15, 2007) ("Defendants cannot escape liability based solely on the absence of an express incorporation clause within the SPD. By including a reference to the prospectus within the SPD in this section, the drafters of the SPD explicitly stated that the prospectus contained 'important information' and impliedly incorporated by reference the prospectus into the SPD. In so

doing, the SPD's drafters brought any statements made in the prospectus, or incorporated therein, into ERISA's crosshairs.")

Furthermore, the SPD for the 401(k) Plan states, under the heading "Investment Options," "You are encouraged to review the fund prospectuses and other available information before deciding how to invest your account." Wise Decl. Ex C. at 10. Such language affirmatively "encouraging" participants to rely on the prospectus and other public information issued by the Company in making decisions about the Plan similarly triggers fiduciary liability for the documents to which it refers. *See In re Dynegy, Inc. ERISA Litig.,* 309 F.Supp.2d 861, 883 (S.D.Tex.2004) (sufficient breach of fiduciary duty had been alleged when employer distributed "SPD containing a statement that 'encouraged' [employees] 'to carefully review' Dynegy's SEC filings 'for additional information relevant to investments in the [company stock fund] when the [fiduciary defendants] knew or should have known .. that the company's SEC filings contained affirmative, material misrepresentations'"). *Varity* made clear that when an employer intentionally links corporate statements to a discussion of the effect of the decision on employee benefits was rendered materially misleading, 516 U.S. at 505, 116 S.Ct. 1065. Under this reasoning, Plaintiffs have properly alleged a claim for the breach of fiduciary duty to disclose based on the SEC filings and other public documents.

■ Defendants argue that the Form S–8 registration statements specifically are not ERISA documents because they are required to be disseminated to employees under securities laws, but Judge Cote addressed this issue directly, and dismissed its merit, in *WorldCom:* "Those who are

ERISA fiduciaries ... cannot in violation of their fiduciary obligations disseminate false information to plan participants, including false information contained in SEC filings." 263 F.Supp.2d at 766–67. *See also Gee v. UnumProvident Corp.*, No. 03–CV–147, 2005 WL 534873, at *16 (E.D.Tenn. Jan. 13, 2005) ("The Court notes federal regulations required Unum-Provident to provide Plan participants with the information in the Form S–8 and any information incorporated therein by reference at the time the document was filed and to update that information so as to reflect any material changes.... As such, Plaintiffs have sufficiently pleaded Defendants, acting in their fiduciary capacities, disseminated materially misleading information to participants."); *In re Reliant Energy ERISA Litig.*, 336 F.Supp.2d 646, 661–62 (S.D.Tex.2004) (holding decisions about substantive contents of Form S–8 and subsequent SEC reports incorporated therein were discretionary acts sufficient to meet pleading requirements for ERISA breach of fiduciary duty claim).

Defendants also argue that the Complaint lacks support for the claim that Morgan Stanley's public filings were misleading because those filings also contained various risk disclosures. Def. Mem. at 19–20. "A determination of whether the information provided to participants was adequate to inform them of the risks of investing in [employer] stock is a fact-intensive inquiry that must await a full factual record." *In re Reliant*, 336 F.Supp.2d at 671 (S.D.Tex.2004). *See In re AEP ERISA Litig.*, 327 F.Supp.2d 812, 832 (S.D.Ohio 2004) ("Whether the communications constituted misrepresentations and whether they were material under the principles we have articulated are questions of fact that are properly left for trial." (quoting *In re Unisys Sav. Plan Litig.*, 74 F.3d 420, 443 (3d Cir.1996))).

Defendants further argue that Plaintiffs fail to allege that the filings were actually misleading in that their Complaint does not adequately demonstrate causation between the public filings, the supposedly withheld information, and any material drop in the price of its stock. However, "[i]n ERISA cases, generally loss causation is an issue of fact and is thus not properly considered at this early stage in the proceeding." *In re Coca–Cola Ents. Inc., ERISA Litig.*, No. 06–CV–953, 2007 WL 1810211, *8 (N.D.Ga. June 20, 2007). *See In re Ferro Corp. ERISA Litig.*, 422 F.Supp.2d 850, 863 (N.D.Ohio 2006); *In re Westar Energy, Inc., ERISA Litig.*, No. 03–CV–4032, 2005 WL 2403832, at *11 (D.Kan. Sept. 29, 2005); *see also Silverman v. Mut. Benefit Life Ins.*, 138 F.3d 98, 104 (2d Cir.1998) (assessing evidence of a causal link at summary judgment); *Kuper v. Iovenko*, 66 F.3d 1447, 1460 (6th Cir. 1995) (same); *Henry v. Champlain Enters., Inc.*, 288 F.Supp.2d 202, 230 (N.D.N.Y.2003) (same). Moreover, although Defendants argue that the Plaintiffs' allegations "sound in fraud" and therefore should require them to allege the "loss causation" element of such a claim, such requirements "do not translate well into the ERISA context." *In re Cardinal Health, Inc., ERISA Litig.*, 424 F.Supp.2d 1002, 1004 (S.D.Ohio 2006) (where the court refused "to read into ERISA a requirement that Plaintiffs must plead 'loss causation' in accordance with the standard necessary for securities fraud claims," and noting that federal courts have not tended to dismiss claims for breach of fiduciary for failing to plead loss causation) (citing *Rankin v. Rots*, 278 F.Supp.2d 853, 874 (E.D.Mich.2003)).

In light of the foregoing authority, Plaintiffs' claim for failure to provide complete and accurate information stands.

### C. The Complaint Alleges with Adequate Particularity that the Fiduciaries Breached a Duty to Inform Participants

Finally, Defendants argue that the Complaint does not contain allegations adequate under Rule 9(b), Fed.R.Civ.P., to allege that any fiduciary with an obligation to provide information knew or should have known the information that Plaintiffs claim should have been disclosed.

▆▆ The Federal Rules of Civil Procedure provide two pleading standards, Rule 8(a) and Rule 9(b). Rule 9(b), Fed.R.Civ. P., provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." *Id.* The Second Circuit "has read Rule 9(b) to require that a complaint [alleging fraud] '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.' " *Rombach v. Chang,* 355 F.3d 164, 170 (2d Cir.2004) (quoting *Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1175 (2d Cir. 1993)). *See, e.g., Ouaknine v. MacFarlane,* 897 F.2d 75, 79 (2d Cir.1990); *Cosmas v. Hassett,* 886 F.2d 8, 11 (2d Cir. 1989); *Center Savings & Loan Association v. Prudential–Bache Securities Inc.,* 679 F.Supp. 274, 277 (S.D.N.Y.1987). However under a Rule 8(a) standard, all that is required is a "short and plain statement of the claim showing that he is entitled to relief." Fed.R.Civ.P. 8(a). Defendants maintain that 9(b) rather than 8(a) should govern the disclosure claim under ERISA, because of the allegations of misrepresentation which they argue "sound in fraud."

▆▆ First, even allegations of knowing and intentional breaches of fiduciary duty, such as those alleged here, do not necessarily amount to claims of fraud. *In re Polaroid ERISA Litig.,* 362 F.Supp.2d 461, 470 (S.D.N.Y.2005) ("[A]llegations of intentional conduct do not transmogrify breach of fiduciary claims into causes of action for fraud; such allegations and characterizations are extraneous to Plaintiffs' claims."). Second, many courts, including courts in this District, have determined that a fiduciary claim brought under ERISA need only plead according to the standard of Rule 8(a), regardless of whether the claims are based on an underlying fraud. *See, e.g., Pugh v. Tribune Co.,* 521 F.3d 686, 699 (7th Cir.2008); *In re Cardinal Health, Inc. ERISA Litig.,* 424 F.Supp.2d 1002, 1015 (S.D.Ohio 2006); *In re Polaroid ERISA Litig.,* 362 F.Supp.2d 461, 469–71 (S.D.N.Y.2005); *Woods v. Southern Co.,* 396 F.Supp.2d 1351, 1359–1360 (N.D.Ga.2005); *In re AEP ERISA Litig.,* 327 F.Supp.2d 812, 822 (S.D.Ohio 2004); *In re Dynegy, Inc. ERISA Litig.,* 309 F.Supp.2d 861, 867 (S.D.Tex.2004); *In re Enron Corp. Sec., Derivative & ERISA Litig.,* 284 F.Supp.2d 511, 652 (S.D.Tex. 2003); *Rankin v. Rotts,* 278 F.Supp.2d 853, 868 (E.D.Mich.2003) ("Overall, [defendants'] motion to dismiss is really an attempt to obtain summary judgment and require [plaintiff] to state her claims with a level of particularity not called out in ERISA and not within her ability at this stage in the case."). Following this line of cases, the Rule 8(a) standard will be applied here.

To satisfy Rule 8's liberal standard, the complaint must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 512, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (quoting *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). The complaint must allow each defendant to answer the claims against him and prepare

for trial. *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir.1988).

First, an ERISA complaint need "do little more than track the statutory definition of fiduciary" to establish a defendant's fiduciary status in compliance with Rule 8. *WorldCom*, 263 F.Supp.2d at 759 (citing *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 241 (2d Cir.2002) (finding that conclusory pleadings adequately allege fiduciary duty)). The Complaint satisfies that standard by alleging the separate ways in which each Defendant was a Plan fiduciary and exercised some discretionary authority over the Plan. (Compl.¶¶ 25–54.) The Complaint goes on to allege that Defendants "knew or should have known," based on a fiduciary's duty to investigate that information they are providing to Plan participants is accurate, *see Enron*, 284 F.Supp.2d at 658; *Polaroid*, 362 F.Supp.2d at 475, that the Company lacked adequate risk management for its investment strategy, and that financial statements did not accurately value Company Stock, which Defendants continued to promote as a prudent investment. Compl. ¶¶ 92, 111, 120, 255, 262, 263, 292. These allegations are sufficient under Rule 8 to appraise the Defendants of the grounds on which the claims are being brought and to allow them to prepare their defense.

Defendants challenge the allegations as insufficient in that the Complaint refers in some instances to Defendants as a group, particularly when alleging what was known or should have been known. Def. Mem. at 24. However, Rule 8 does not require Plaintiffs to identify each Defendant by name when the Complaint makes an allegation that applies equally to all. *See Polaroid*, 362 F.Supp.2d at 471; *Rankin*, 278 F.Supp.2d at 867; *WorldCom*, 263 F.Supp.2d at 767 n. 15 ("Because of the standards applicable to a claim governed by Rule 8 pleading standards, and

the plaintiffs' decision to use generalized allegations against groups of defendants, the plaintiffs have not had to articulate in the Complaint how Miller would have acquired sufficient knowledge of WorldCom's financial condition to understand that it was not prudent or reasonable to rely on the company's SEC filings.")

Furthermore, Rule 8 does not require "that Plaintiffs limn the specific circumstances by which each Defendant acquired knowledge of the alleged misconduct" at the pleading stage. *Polaroid*, 362 F.Supp.2d at 471 (S.D.N.Y.2005). One reason for not applying the Rule 9(b) pleading standard to breach of fiduciary duty claims is that plaintiffs "often will not, at the time [they] file[ ] [their] complaint, be in a position to describe with particularity the events constituting the alleged misconduct." *Concha v. London*, 62 F.3d 1493, 1503 (9th Cir.1995). *See also In re Natural Gas Commodity Litig.*, 337 F.Supp.2d 498, 506 (S.D.N.Y.2004) ("[I]t is the role of the litigation tools of discovery and summary judgment to weed out unmeritorious suits.").

## VII. THE COMPLAINT PROPERLY ALLEGES A CLAIM FOR BREACH FOR FIDUCIARY DUTY TO AVOID CONFLICTS OF INTEREST

Plaintiffs' third cause of action alleges that Defendants breached their fiduciary duty to avoid conflicts of interest by failing to avoid or ameliorate inherent conflicts of interests. Defendants argue that Plaintiffs have failed to state a claim for conflict-of-interest because they have not shown any valid conflict or any connection between the supposed conflict and any claimed harm to the Plan.

The Complaint alleges that certain Defendants had significant personal investments in Morgan Stanley stock, stock op-

tions, and future stock compensation. Plaintiffs allege that under these circumstances Defendants had the incentive to maintain Company Stock at a high price and therefore maintain the Plans' investment in Company Stock which conflicted with their fiduciary duty to act solely in the interest of the Plans participants. Those incentives allegedly motivated certain Defendants, including Defendant Mack, to increase the Company's Stock to risky but high-yielding assets.

These allegations sufficiently support, at the pleading stage, a claim for breach of the fiduciary duty to avoid conflicts of interest under ERISA. *See, e.g., Woods v. S. Co.,* 396 F.Supp.2d 1351, 1359–60 ("find[ing] that Plaintiff satisfied the low pleading threshold of Rule 8 by averring that Defendants held an interest in [the employer] during the relevant time period, and engaged in imprudent acts and omissions with respect [to] the Plan and to protect the value of their own investment"); *Hill v. BellSouth Corp.,* 313 F.Supp.2d 1361, 1369–70 (N.D.Ga.2004) (holding that fiduciaries whose compensation was tied in some manner to the price of employer stock had an incentive to boost the value of such employer stock that conflicted with the interests of the Plan participants and beneficiaries sufficient to state a claim for breach of ERISA's fiduciary duty of loyalty); *In re Honeywell Int'l ERISA Litig.,* No. 03–CV–1214, 2004 WL 3245931, at *13, 2004 U.S. Dist. LEXIS 21585, at *45 (D.N.J. Sept. 14, 2004) ("Although Defendants' mere status as employees [of the Company] is not actionable, they can still be held liable for disloyalty if they acted in their own interests or the Company's, and against the interests of the Plan, while performing fiduciary duties," and even "imprecise" allegations stated a claim for breach of the duty of loyalty where, *inter alia,* the compensation of the fiduciaries was tied to the value of the stock).

## VIII. THE COMPLAINT SUFFICIENTLY ALLEGES FAILURE TO ADEQUATELY MONITOR OTHER FIDUCIARIES

Plaintiffs' fourth cause of action alleges that Defendants Morgan Stanley, MS & Co, Morgan Stanley Director Defendants and MS & Co Director Defendants (collectively, the "Monitoring Defendants") failed to adequately monitor other fiduciaries and provide them with adequate information about the undue risks posed by Company Stock and to remove appointees who ignored such risk.

 The fiduciary duties imposed by ERISA § 404(a) require those fiduciaries with the power to appoint and remove plan fiduciaries to monitor the performance of those appointees, and to provide the appointees with any adverse information that the fiduciary might possess. *See, e.g., WorldCom,* 263 F.Supp.2d at 765 ("When a corporate inside puts on his ERISA hat, he is not assumed to have forgotten adverse information he may have acquired while acting in his corporate capacity"); *Woods,* 396 F.Supp.2d at 1373 (the duty to monitor includes the responsible to share material, non-public information with appointed fiduciaries); *In re AEP ERISA Litig.,* 327 F.Supp.2d 812, 833 (S.D.Ohio 2004) ("Where the duty to monitor is irrefutable and this litigation is in its infancy, Plaintiffs' allegations re sufficient to meet this requirements of Rule 8(a), especially where further factual development cannot occur without discovery.")

 The Complaint alleges that, as Company Stock in the Plans declined in value by nearly $3 billion dollars, the Monitoring Defendants did nothing, suggesting that no system was in place to review and evaluate the performance of their appointees or that potential breaches were otherwise going unaddressed. These allegations sufficiently support a claim for the

breach of the duty to monitor under ERISA. *See Polaroid,* 362 F.Supp.2d at 477 (allegation that a defendant failed to keep plan administrators and fund managers informed is sufficient to state a claim for failure to monitor under ERISA).

Defendants' sole argument with respect to this claim is that the Complaint fails to allege a valid primary claim. As the Court has already disposed of this argument, it will not address it further here. The claim for failure to monitor other fiduciaries stands.

## IX. COMPLAINT SUFFICIENTLY ALLEGES CO-FIDUCIARY LIABILITY

Finally, the Plaintiffs' fifth cause of action alleges that Defendants breached their duties and responsibilities as co-fiduciaries under § 405 of ERISA, 29 U.S.C. § 1105, by failing to prevent breaches by other fiduciaries of their fiduciary duties and/or by enabling breaches by other fiduciaries of their fiduciary duties.

 ERISA § 405(a), 29 U.S.C. § 1105(a) renders a fiduciary liable for the breach of another fiduciary if he or she (1) participates knowingly in, or knowingly undertakes to conceal, and act or omission of such other fiduciary, knowing such act or omission is a breach; or (2) enables another fiduciary to commit a breach; or (3) has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts to remedy the breach. 29 U.S.C. § 1105(a). Where a complaint adequately pleads a defendants' breach of fiduciary duty, the complaint generally also states a valid claim for co-fiduciary liability against that same defendant. *See, e.g., Honeywell,* 2004 WL 3245931, at *14, 2004 U.S. Dist. LEXIS 21585, at *49 ("Given that Plaintiffs have adequately alleged against all Defendants claims arising from misrepresentations and failures to disclose material information, and claims of impru-

dent investment of Plan funds, it follows almost inevitably that they have also stated claims that the same Defendants were liable as co-fiduciaries with respect to the same breaches.")

 The Complaint alleges that each Defendant breached his or her duties as co-fiduciaries by failing to prevent breaches by other fiduciaries and/or by enabling breaches by other fiduciaries. Compl. ¶¶ 317–25. In particular, the Complaint alleges that the Monitoring Defendants who was intimately aware of the serious problems facing the Company, enabled the breaches of other fiduciaries, namely the Investment Committee, by failing the provide members of that committee with information concerning the imprudent of investing in Company Stock. *Id.* ¶¶ 321–23. These allegations sufficiently state a claim for co-fiduciary liability.

As in response to the monitoring claim, Defendants merely argue that the co-fiduciary claim is moot because none of the Defendants are fiduciaries. That argument having been addressed, and in light of the pleadings, the claim for co-fiduciary liability will not be dismissed.

### Conclusion

Based on the facts and conclusions set forth above, Defendants' motion to dismiss is denied.

It is so ordered.